STATE OF CONNECTICUT *v.* PAUL D. KREMINSKI

COTTER, C. J., LOISELLE, PETERS, PARSKEY and D. SHEA, Js.

Argued January 10—decision released June 26, 1979

146

*Jack R. Pirozzolo,* with whom, on the brief, was *Andrew G. Messina, Jr.,* for the appellant (defendant).

*Stephen J. Solomson,* assistant state's attorney, with whom were *Warren A. Gower,* assistant state's attorney, and, on the brief, *Linda J. Sullivan,* law student intern, for the appellee (state).

DAVID M. SHEA, J. After a trial by the court upon a written stipulation of facts the defendant was convicted of five counts of violating General Statutes § 36-334,[1] a provision of the Connecticut Securities Act. Four of the counts were based upon the prohibition against a "registered salesman" acting as a salesman of securities "except on behalf of the registered broker or dealer by whom he is employed as a registered salesman." The fifth count charged the defendant with selling securities through various salesmen and acting as a broker or dealer without being properly registered. The defendant has appealed from the judgment and has raised questions concerning the interpretation and the constitutionality of the statutory provisions involved. His principal claim is that a business regulatory statute not involving unethical conduct

---

[1] General Statutes § 36-334 provided in part as follows: "No registered salesman shall act as a salesman except on behalf of the registered broker or dealer by whom he is employed as a registered salesman. . . ." (Repealed Public Acts 1977, No. 77-482, § 21.)

under traditional moral tenets cannot be classified as a felony and subject him to the consequences of a felony conviction. Additional grounds raised are whether the items sold by the defendant were "securities" as defined by the Connecticut Securities Act and whether the provisions involved are constitutionally infirm because of vagueness.

The stipulation of facts submitted to the trial court may be summarized as follows: The defendant was registered as a salesman with the state banking commission and was employed by an investment company in Meriden. He was not registered as a broker-dealer. He employed three other persons as salesmen for the purpose of selling short-term notes of Federal Financial Services, Inc., and he received commissions on their sales of such notes to Connecticut residents. He himself also sold such notes to five Connecticut residents. In these activities the defendant was not acting on behalf of the investment company which employed him. Federal Financial Services, Inc., whose notes were the subject matter of the offenses, was not registered as a broker-dealer with the state banking commission. The court imposed sentences of thirty days upon each of the five counts, the execution of which was suspended with probation for one year. In addition, a fine of $1000 was imposed on each count. A more detailed recital of the facts is unnecessary for a consideration of the issues in this appeal.

I

The first claim of the defendant is that, because of the felony classification given to a violation of § 36-334, the requirement of mens rea or evil intention should be effectively read into the statute. It is not clear what the nature of this mental state

would be, whether it would involve some species of fraud or simply a knowledge that the activities engaged in by the defendant were prohibited without a license. A separate provision of the Connecticut Securities Act, § 36-338,[2] establishes a much more severe penalty for fraud in the sale of any security and would render § 36-334 superfluous if it required a fraudulent intention to be proved. We also have no reason to suppose that the legislature wished to create an exception to the axiom that ignorance of the law is no excuse by conditioning a violation of the statute upon awareness of the necessity for a license.

"While the general rule at common law was that the scienter was a necessary element in the indictment and proof of every crime, and this was followed in regard to statutory crimes, even where the statutory definition did not in terms include it . . . there has been a modification of this view in respect to prosecutions under statutes the purpose of which would be obstructed by such a require-

[2] "[General Statutes] Sec. 36-338. PROHIBITED ACTS. (a) No person, in connection with the sale, offer to sell, purchase or offer to purchase of any security, directly or indirectly, shall (1) employ any device, scheme or artifice to defraud, (2) make any untrue statement of a material fact or omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading, or (3) engage in any act, practice or course of business which operates or would operate as a fraud or deceit upon any person.

(b) No person who receives any consideration from another person primarily for advising the other person as to the value of securities or their purchase or sale, whether through the issuance of analyses or reports or otherwise, shall (1) employ any device, scheme or artifice to defraud the other person or (2) engage in any act, practice or course of business which operates or would operate as a fraud or deceit upon the other person.

(c) Any person who violates any provision of this section shall be fined not more than ten thousand dollars or imprisoned not more than ten years or both." (Repealed Public Acts 1977, No. 77-482, § 21.)

ment." *United States* v. *Balint,* 258 U.S. 250, 251–52, 42 S. Ct. 301, 66 L. Ed. 604 (1922). "[T]he legislature may, if it so chooses, ignore the common-law concept that criminal acts require the coupling of the evil-meaning mind with the evil-doing hand and may define crimes which depend on no mental element, but consist only of forbidden acts or omissions." *State* v. *Husser,* 161 Conn. 513, 515, 290 A.2d 336 (1971). "Whether or not a statutory crime requires 'mens rea' or 'scienter' as an element of the offense is largely a question of legislative intent to be 'determined from the general scope of the act and from the nature of the evils to be avoided.'" Ibid.; *State* v. *Gaetano,* 96 Conn. 306, 316, 114 A. 82 (1921).

The defendant concedes that there are many instances where the requirement of criminal intent has been omitted from police regulatory or public welfare statutes. *Morrissette* v. *United States,* 342 U.S. 246, 255–58, 72 S. Ct. 240, 96 L. Ed. 288 (1952). He maintains, however, that such laws involve inherently evil actions or relatively minor penalties, unlike § 36-334 where the same conduct by a duly authorized person is lawful and the substantial penalty of two years imprisonment or a two thousand dollar fine or both is provided. With respect to inherent evil, in the sense of the degree of moral culpability of the actor implicit in the offense, there is a growing recognition that regulatory legislation may exclude the conventional requirement of awareness of wrongdoing for criminal conduct by placing the "burden of acting at hazard upon a person otherwise innocent but standing in responsible relation to a public danger." *United States* v. *Dotterweich,* 320 U.S. 277, 281, 64 S. Ct. 134, 88 L. Ed. 48 (1943); see *United States* v. *Park,* 421 U.S. 658,

673, 95 S. Ct. 1903, 44 L. Ed. 2d 489 (1975). The touchstone is not the reprehensibility of the offender but the "nature of the evils to be avoided," and the extent of the probable frustration of the regulatory scheme which a requirement of scienter would create. *United States* v. *Balint,* supra, 254. Personal blame on the part of the actor, except in the general sense that he should have known better or exercised a greater degree of care, is not a necessary element of many offenses where protection of the public against the harm which would result in the absence of regulation is the principal legislative concern. *United States* v. *Balint,* supra (possession of narcotics); *United States* v. *Park,* supra, 674 (failure to implement food sanitation standards); *State* v. *Husser,* supra (selling narcotic drugs); *State* v. *Guerra,* 151 Conn. 159, 165, 195 A.2d 50 (1963) (unauthorized delivery of liquor into a jail); *State* v. *Sul,* 146 Conn. 78, 86, 147 A.2d 686 (1958) (possession of obscene literature); *State* v. *Gaetano,* 96 Conn. 306, 315, 114 A. 82 (1921) (keeping a house of ill fame); *State* v. *Kinkead,* 57 Conn. 173, 180, 17 A. 855 (1889) (allowing minors to loiter upon premises where liquor is sold); *Barnes* v. *State,* 19 Conn. 398, 404 (1849) (selling liquor to a common drunkard). The due process limitation upon this principle, where the conduct involved is wholly passive, such as the failure of a convicted felon, with no notice of such a requirement, to register within a certain time after coming into a municipality having a criminal registration ordinance, is not applicable here. *Lambert* v. *California,* 355 U.S. 225, 228, 78 S. Ct. 240, 2 L. Ed. 2d 228 (1957). "[P]ublic policy may require that in the prohibition or punishment of particular acts it may be provided that he who shall do them shall do them

at his peril, and will not be heard to plead in defense good faith or ignorance." *Shevlin-Carpenter Co.* v. *Minnesota,* 218 U.S. 57, 70, 30 S. Ct. 663, 54 L. Ed. 930 (1910).

In cases dealing specifically with the state "blue sky" laws and provisions similar to § 36-334 forbidding security sales by unlicensed persons, it has been held that scienter or awareness of a licensing requirement is not essential for a violation. *People* v. *Terranova,* 38 Colo. App. 476, 482, 563 P.2d 363 (1977); *State* v. *Burrow,* 13 Ariz. App. 130, 132, 474 P.2. 849 (1970). "[S]tate of mind is of as little relevance in a charge of sale of an unregistered security by an unlicensed person . . . as it would be in a prosecution for a speeding violation." *People* v. *Terranova,* supra, 485. Federal security laws typically impose criminal liability only for "wilful" violations under the express terms of the penalty provisions of the statutes involved.[3] 15 U.S.C. §§ 77k (a), 77yyy, 78ff. No particular mental state is necessary for civil liability of the issuer for untrue statements in the registration documents. 15 U.S.C. § 77k (a); *Ernst & Ernst* v. *Hochfelder,* 425 U.S. 185, 200, 96 S. Ct. 1375, 47 L. Ed. 2d 668 (1976). Although protection of the financial interest of the public may not be as paramount as safeguarding its health and morals by suppressing activities which endanger those interests, nevertheless,

---

[3] The cases relied upon by the defendant involve federal statutes expressly requiring some kind of mental element. In *United States* v. *Crosby,* 294 F.2d 928 (2d Cir. 1961), the charges were mail fraud, wire fraud, and wilful and knowing use of the mails to sell unregistered stock. In *Ernst & Ernst* v. *Hochfelder,* 425 U.S. 185, 96 S. Ct. 1375, 47 L. Ed. 2d 668 (1976), the statutory provision banned the use of "any manipulative or deceptive device or contrivance," a phrase which was construed to connote only "intentional or wilful conduct designed to deceive or defraud."

it is a matter of serious concern and the legislature might reasonably have concluded that strict criminal liability was appropriate.

The repeal of the Connecticut Securities Act and the substitution of the Uniform Securities Act, which became effective after the offenses involved here had occurred, is of no benefit to this defendant. Public Acts 1977, No. 77-482; General Statutes, c. 662. The new enactment imposes criminal penalties only for wilful violations. General Statutes § 36-497. If this change has any significance in construing the earlier act, it can only be that, without the word "wilfully," the legislative intention as expressed was that no such mental element was necessary for a violation. *Willoughby* v. *New Haven,* 123 Conn. 446, 455, 197 A. 85 (1937).

There is a suggestion in some of the early cases dealing with police regulatory legislation not requiring any criminal intent that the penalties must be "petty" and not involve imprisonment. *Tenement House Department* v. *McDevitt,* 215 N.Y. 160, 168–69, 109 N.E. 88 (1915); *People ex rel. Price* v. *Sheffield Farms Co.,* 225 N.Y. 25, 32–33, 121 N.E. 474 (1918); see *Morrissette* v. *United States,* 342 U.S. 246, 258, 72 S. Ct. 240, 96 L. Ed. 288 (1952). The question left undecided in those cases, whether a provision for imprisonment necessarily implied a requirement of mens rea, has long been resolved in favor of the view that the abandonment of the element of intent depends upon the "peculiar nature and quality of the offense" and whether the penalty serves as an effective means of regulation. *Morrissette* v. *United States,* supra, 259; *United States* v. *Dotterweich,* 320 U.S. 277, 280, 64 S. Ct. 134, 88 L. Ed. 48 (1943); *United States* v. *Balint,* 258 U.S.

250, 251, 42 S. Ct. 301, 66 L. Ed. 604 (1922). To the extent that this issue involves obliquely the prohibition against "cruel and unusual punishments,"[4] the defendant has the "heavy burden" of establishing that the penalty imposed was "cruelly inhumane or disproportionate to the crime involved." *Gregg* v. *Georgia,* 428 U.S. 153, 175, 96 S. Ct. 2909, 49 L. Ed. 2d 859 (1976). Certainly the sentence in this case of 150 days with execution suspended and probation for one year as well as fines in the total sum of $5000 would not satisfy this burden. The fines amount to only half of the commissions illegally received by the defendant for the sale of the notes. Only a violation of the conditions of probation could subject the defendant to actual service of the jail sentence, the length of which would be subject to modification after a hearing. General Statutes § 53a-32 (b). The penalties actually imposed fell within the limits provided for misdemeanors. General Statutes §§ 53a-36, 53a-42. The felony classification given to the crimes committed by the defendant may also have involved a forfeiture of his rights as an elector until payment of the fines and completion of the period of probation. General Statutes §§ 9-46, 9-46a. This additional consequence does not in our judgment render the sentence so grossly disproportionate to the offense as to breach the constitutional prohibition against "cruel and unusual" punishment. *Lassiter* v. *Northampton County Board of Elections,* 360 U.S. 45, 51, 79 S. Ct. 985, 3 L. Ed. 2d 1072 (1959); *Davis* v. *Beason,* 133 U.S. 333, 346–47, 10 S. Ct. 299, 33 L. Ed. 637 (1890).

[4] U.S. Const., amend. VIII; see Conn. Const., art. 1, § 8.

## II

The defendant also claims that the notes of Federal Financial Services, Inc., which were the subject of the unlicensed sales were exempt from the operation of § 36-334. The basis for this contention is that the federal securities act[5] exempts "[a]ny note . . . which arises out of a current transaction or the proceeds of which have been or are to be used for current transactions, and which has a maturity at the time of issuance of not exceeding nine months . . . ." 15 U.S.C. § 77c (a) (3). The mere fact that the notes involved here have a maturity of less than nine months would not exempt them unless the requirement that they arise out of a "current transaction" were also fulfilled. *Securities and Exchange Commission* v. *Continental Commodities Corporation;* 497 F.2d 516, 524 (5th Cir. 1974) ; *Sanders* v. *John Nuveen & Co.,* 463 F.2d 1075 (7th Cir. 1972). The stipulation of facts declares that all of the notes were purchased for investment purposes and were not given in connection with any commercial or business transaction. In any event, the definition of "security" in § 36-321 of the Connecticut Securities Act includes "any stock; bond; note; debenture; evidence of indebtedness," and there is no exemption for short-term commercial paper comparable to those found in the federal acts. Although it is a sound principle of statutory construction to give words in federal and state statutes dealing with the same subject matter similar meanings, we cannot understand how an exemption contained in a federal statute can be inserted into a state statute which does not contain it.

---

[5] The Securities Act of 1933, 15 U.S.C. §§ 77a et seq.

The defendant has also raised a claim that the statutory provisions under which he was presented are unconstitutionally vague. One deficiency which he points to is the use of the phrase "on behalf of" in the prohibition in § 36-334 against a registered salesman acting as a salesman "except *on behalf of* the registered broker or dealer by whom he is employed as a registered salesman." (Emphasis added.) We think it is clear to "men of common intelligence"; *Connally* v. *General Construction Co.,* 269 U.S. 385, 391, 46 S. Ct. 126, 70 L. Ed. 322 (1926); that the statute prohibits a registered salesman from selling securities except as an agent of his employer, who must be a registered broker or dealer. Another deficiency claimed is that the statute leaves unclear the activities which constitute acting as a "broker" or "dealer" in violation of § 36-334, as the defendant is charged in the fifth count of the information. The terms are defined in § 36-321 (c) and the part of the definition applicable to the defendant's conduct as detailed in the stipulation of facts provides that a " '[b]roker' or 'dealer' includes any person, other than a salesman, who, within or from this state, engages, either for all or any part of his time, directly, indirectly or through an agent or agents, in the business of selling or offering for sale . . . a security or securities." There is no vagueness in this definition as applied to the defendant's hiring of four other persons who made numerous sales of Federal Financial Services notes to various Connecticut residents. "It is well established that vagueness challenges to statutes which do not involve First Amendment freedoms must be examined in the light of the facts of the case at hand." *United States* v. *Mazurie,* 419 U.S. 544, 550, 95 S. Ct. 710, 42 L. Ed. 2d 706 (1975); *United States* v. *Powell,*

423 U.S. 87, 92, 96 S. Ct. 316, 46 L. Ed. 2d 228 (1975). "One to whose conduct a statute clearly applies may not successfully challenge it for vagueness." *Parker* v. *Levy*, 417 U.S. 733, 756, 94 S. Ct. 2547, 41 L. Ed. 2d 439 (1974).

There is no error.

In this opinion the other judges concurred.