## Robert L. Leech *v.* Veterans' Bonus Division Appeals Board

Cotter, C. J., Loiselle, Bogdanski, Peters and Healey, Js.

Argued October 3—decision released December 11, 1979

*Robert J. Wise,* for the appellant (plaintiff).

*Bernard F. McGovern, Jr.,* assistant attorney general, with whom, on the brief, was *Carl R. Ajello,* attorney general, for the appellee (defendant).

ARTHUR H. HEALEY, J. General Statutes §§ 27-140a through 27-140m provide for a bonus for veterans of the Vietnam era. A threshold qualification a veteran must possess to be eligible for such a bonus is that he, "at the time of entering such service, had been domiciled in this state for at least one year next preceding . . . [such entry into service]." General Statutes § 27-140a. The plaintiff's application for the Vietnam bonus was denied by the state treasurer because the plaintiff did not fulfill that qualification. The Veterans' Bonus Division Appeals Board upheld the action of the state treasurer on the same ground. Thereafter, the plaintiff appealed to the Court of Common Pleas, which dismissed his appeal. The appeal to this court followed.

The material facts are not contested. The plaintiff Robert L. Leech, while a minor living with his parents in Indiana, entered the military service as a cadet at the United States Military Academy at West Point, New York. Upon his graduation from West Point in 1960, he was commissioned an officer in the army and has been on active military duty ever since. In 1964, he established his domicile in Connecticut and has maintained it continuously ever since. His active military duty has included two tours of duty in Vietnam. His claim for a bonus as a Vietnam veteran was denied because he was not domiciled in Connecticut for the one year period just prior to his entrance into the service.

The plaintiff has mounted a broadside attack on the domicile requirement of the Vietnam veterans' bonus statute. He claims that the domicile requirement violates the equal protection clause of the fourteenth amendment of the United States constitution

and article first, § 1 of the state constitution by creating a classification based on prior residence that is inherently suspect or that infringes upon a fundamental constitutional right without a showing by the state that the classification established is necessary to promote a compelling governmental interest. The plaintiff alternatively contends that the domicile requirement does not bear a rational relationship to a legitimate state purpose. The plaintiff also claims that the domicile requirement is severable from the veterans' bonus statute. Because we have said that article first, § 1 of the state constitution has a like meaning to that of the equal protection clause of the fourteenth amendment to the federal constitution; *Lublin* v. *Brown,* 168 Conn. 212, 219, 362 A.2d 769 (1975); *Lyman* v. *Adorno,* 133 Conn. 511, 515, 52 A.2d 702 (1947); our analysis of the claim based upon the federal constitution shall apply with equal force to the state constitutional provision.

At the outset of the consideration of every equal protection claim lies the determination of the standard of review by which the challenged classification must be judged. "Equal protection analysis must commence with a determination of whether a legislative classification is invidious, or 'inherently suspect,' or whether the legislation impinges upon a fundamental right. Where the legislation impinges upon a fundamental right or creates a suspect classification, then it must be struck down unless justified by a compelling state interest. *Dunn* v. *Blumstein,* 405 U.S. 330, 335, 342, 92 S. Ct. 995, 31 L. Ed. 2d 274. Where the statute does not involve fundamental rights or suspect classifications, the legislation will withstand constitutional attack if the distinction is founded on a rational basis." (Citations omitted.) *Laden* v.

*Warden,* 169 Conn. 540, 542–43, 363 A.2d 1063 (1975); see also *Horton* v. *Meskill,* 172 Conn. 615, 640, 376 A.2d 359 (1977).

The plaintiff's argument that the critical analysis of "strict scrutiny"; see *Shapiro* v. *Thompson,* 394 U.S. 618, 638, 89 S. Ct. 1322, 22 L. Ed. 2d 600 (1969); must be used here because the statutory provision creates an "inherently suspect" classification, merits little discussion. The classification created is not "inherently suspect." This is so because the classification attacked has none of the traditional indicia of suspectness: "[T]he class is not saddled with such disabilities, or subjected to such a history of purposeful unequal treatment, or relegated to such a position of political powerlessness as to command extraordinary protection from the majoritarian political process." *San Antonio Independent School District* v. *Rodriguez,* 411 U.S. 1, 28, 93 S. Ct. 1278, 36 L. Ed. 2d 16 (1973). The United States Supreme Court has recognized as suspect, classifications based on race, *McLaughlin* v. *Florida,* 379 U.S. 184, 85 S. Ct. 283, 13 L. Ed. 2d 222 (1964), national origin, *Korematsu* v. *United States,* 323 U.S. 214, 65 S. Ct. 193, 89 L. Ed. 194 (1944), and alienage, *Graham* v. *Richardson,* 403 U.S. 365, 91 S. Ct. 1848, 29 L. Ed. 2d 534 (1971).[1] The veterans' bonus statute clearly does not create a suspect classification.

The plaintiff also claims that we must employ the strict scrutiny standard of review because the statute infringes upon a fundamental interest, the con-

---

[1] The Supreme Court recently has recognized exceptions to the suspect status of aliens. See *Foley* v. *Connelie,* 435 U.S. 291, 98 S. Ct. 1067, 55 L. Ed. 2d 287 (1978), and *Ambach* v. *Norwick,* 441 U.S. 60, 99 S. Ct. 1589, 60 L. Ed. 2d 49 (1979). For discussions of the state of the Supreme Court's recent equal protection analysis, see generally L. Tribe, American Constitutional Law, 991–1136 (1978); Con-

stitutionally protected right to travel. We do not agree. The right of interstate travel has long been firmly established and repeatedly recognized as a fundamental right under the federal constitution. *United States* v. *Guest,* 383 U.S. 745, 757, 759, 86 S. Ct. 1170, 16 L. Ed. 2d 239 (1966) and cases there cited; see also *Memorial Hospital* v. *Maricopa County,* 415 U.S. 250, 253, 94 S. Ct. 1076, 39 L. Ed. 2d 306 (1974); *Dunn* v. *Blumstein,* 405 U.S. 330, 335, 92 S. Ct. 995, 31 L. Ed. 2d 274 (1972); *Oregon* v. *Mitchell,* 400 U.S. 112, 237, 91 S. Ct. 260, 27 L. Ed. 2d 272 (1970); *Shapiro* v. *Thompson,* supra, 629–31, 634. This freedom to travel from state to state includes the "freedom to enter and abide in any State in the Union." *Oregon* v. *Mitchell,* supra, 285; see *Slaughter-House Cases,* 83 U.S. (16 Wall.) 36, 80, 21 L. Ed. 394 (1872). In *Memorial Hospital* the United States Supreme Court made clear that, "[a]lthough any durational residence requirement impinges to some extent on the right to travel," it is the degree of the impact upon the right to travel that determines whether the state will be required to demonstrate a compelling state interest to justify the statute or simply a rational relationship between the statute and a proper state interest. See *Memorial Hospital* v. *Maricopa County,* supra, 256–57. The statute will be subject to strict judicial scrutiny where its impact on the right to travel rises to the level of either (1) deterring migration, or (2) penalizing the exercise of the right to travel. Ibid.; see

gressional Research Service, The Constitution of the United States of America, Analysis and Interpretation (1973), pp. 1474–1477 and 1978 Sup.; Karst, The Supreme Court, 1976 Term—Foreword: Equal Citizenship Under the Fourteenth Amendment, 91 Harv. L. Rev. 1 (1977); Dixon, The Supreme Court and Equality: Legislative Classifications, Desegregation, and Reverse Discrimination, 62 Cornell L. Rev. 494 (1977).

*Shapiro* v. *Thompson,* supra, 631, 638.  Thus, in *Shapiro* the Supreme Court concluded that the imposition of a one year waiting period for interstate migrants as a condition to receiving welfare benefits unconstitutionally deterred migration. *Shapiro* v. *Thompson,* supra, 629, 631.  In *Dunn,* the court found that the denial of the franchise, "a fundamental political right"; *Reynolds* v. *Sims,* 377 U.S. 533, 562, 84 S. Ct. 1362, 12 L. Ed. 2d 506 (1964); to new residents for one year constituted a penalty on the exercise of the constitutional right to travel. *Dunn* v. *Blumstein,* supra, 340–43. In *Memorial Hospital,* the Supreme Court had before it an Arizona statute that required a county to deny free non-emergency medical care to persons who had not resided in the county for at least twelve months. Analogizing the statute to the one it invalidated in *Shapiro,* the court struck it down as penalizing the right to travel, concluding that the state could not justify the residency requirement by showing that it was necessary to promote a compelling state interest. *Memorial Hospital* v. *Maricopa County,* supra, 254–59, 261–69.

We, however, need not go that far in our analysis in this case because we have determined that the domicile requirement of § 27-140a is not a durational residency requirement of the type that has been held to have some impact on the right of interstate travel.  We base this conclusion upon a comparison of § 27-140a with the durational residency statutes that the United States Supreme Court has struck down.  In each of the cases referred to above, the challenged statute imposed a waiting period on new residents as a condition to the receipt of prospective benefits to which they would have been entitled but for the recent exercise of their right to interstate

travel. In *Dunn* v. *Blumstein,* supra, 338, the Supreme Court said that "Tennessee's durational residence laws classify bona fide residents on the basis of *recent* travel, penalizing those persons, and only those persons, who have gone from one jurisdiction to another during the *qualifying period.*" (Emphasis added.) The domicile requirement of § 27-140a has no such impact on the right to travel. Instead, this one year domicile requirement has been employed by the legislature as one of the criteria to identify a class of persons which it has decided to recognize and benefit. That class was determined and closed on the date the statute became effective. The statute provided for no continuing or prospective benefit to be conferred upon new residents only after a certain waiting period had elapsed, as was the case in *Shapiro, Dunn* and *Memorial Hospital.*

Under the reasoning of the United States Supreme Court cases, a proscribed durational residence requirement[2] is a requirement that the traveler not only be a state resident but also that he maintain that status for a certain minimum period before qualifying for benefits; see e.g., *Ector* v. *City of Torrance,* 10 Cal. 3d 129, 135, 514 P.2d 433 (1973); one which subjects a new resident to a substantial waiting period before he can apply for the benefit involved. See *Abrahams* v. *Civil Service Commission,* 65 N.J. 61, 70, 319 A.2d 483 (1974). The domicile requirement of § 27-140a bears no essential analytical similarity to the statutes invalidated in *Shapiro, Dunn* or *Memorial Hospital.* The statute,

[2] The Supreme Court has made clear that not all durational residence requirements unconstitutionally impinge upon the right of interstate travel. See, e.g., *Sosna* v. *Iowa,* 419 U.S. 393, 95 S. Ct. 553, 42 L. Ed. 2d 532 (1975); *Vlandis* v. *Kline,* 412 U.S. 441, 452–53, 93 S. Ct. 2230, 37 L. Ed. 2d 63 (1973).

enacted in 1967, did not require that the plaintiff, as a condition to qualify for the bonus, *wait* any given period of time, as did the statutes in *Shapiro, Dunn* and *Memorial Hospital.* Unlike those statutes, no matter how long the plaintiff would reside in this state after the one year period set forth in § 27-140a, he could never become a member of the class benefited by the statute. Therefore, his right to travel was not affected.

Because, as we have concluded, the statute does not impinge upon a fundamental right or create a suspect classification, it will withstand constitutional attack if the distinction is founded on a rational basis. *Horton* v. *Meskill,* 172 Conn. 615, 640, 376 A.2d 359 (1977); *Laden* v. *Warden,* supra. The classification that the plaintiff challenges basically distinguishes between two groups of persons: (1) those persons who have served in the armed forces during the Vietnam era for a period of ninety days or more who, at the time of their induction, had been domiciled in this state for at least one year next preceding their entry into the service; and (2) those persons who have served in the armed forces during the Vietnam era for a period of ninety days or more.[3] One claiming that a legislative enactment is unconstitutional has no easy burden; *Lublin* v. *Brown,* 168 Conn. 212, 219, 362 A.2d 769 (1975); *Whitfield* v. *Empire Mutual Ins. Co.,* 167 Conn. 499,

---

[3] Although other classifications could be suggested; e.g., those persons who meet the additional criteria but who have been domiciled in the state less than one year prior to induction; in determining whether a particular person has been denied equal protection of the laws we need only compare the class declared eligible for benefits by the statute with the class to which the person challenging that statute belongs. See *Kellems* v. *Brown,* 163 Conn. 478, 483, 313 A.2d 53 (1972); *Hardware Mutual Casualty Co.* v. *Premo,* 153 Conn. 465, 471, 217 A.2d 698 (1966).

507, 356 A.2d 139 (1975); and must establish its invalidity on that ground beyond a reasonable doubt. *Kellems* v. *Brown,* 163 Conn. 478, 485, 313 A.2d 53, appeal dismissed, 409 U.S. 1099, 93 S. Ct. 911, 34 L. Ed. 2d 678 (1975); *Beach* v. *Bradstreet,* 85 Conn. 344, 349, 82 A. 1030 (1912). Article first, § 1 of our constitution, like the equal protection guarantee of the federal constitution, has never been held to prevent the legislature from dealing differently with different classes of persons provided there is "some natural and substantial difference germane to the subject and purposes of the legislation between those within the class included and those whom it leaves untouched." *Lyman* v. *Adorno,* 133 Conn. 511, 521, 52 A.2d 702 (1947), quoting *State* v. *Cullum,* 110 Conn. 291, 295, 147 A. 804 (1930). The equal protection clause imposes "a requirement of some rationality in the nature of the class singled out," but the constitutional demand is not a demand that a statute necessarily apply equally to all persons. See *Rinaldi* v. *Yeager,* 384 U.S. 305, 308–309, 86 S. Ct. 1497, 16 L. Ed. 2d 577 (1966). "The Constitution does not require things which are different in fact . . . to be treated in law as though they were the same." *Tigner* v. *Texas,* 310 U.S. 141, 147, 60 S. Ct. 879, 84 L. Ed. 1124 (1940).

There can be no question that the domicile requirement of § 27-140a has a rational relationship to a legitimate state interest. Unlike the statute in *Beach* v. *Bradstreet,* 85 Conn. 344, 82 A. 1030 (1912), this statute is carefully drawn to benefit only those veterans who had a substantial nexus with this state prior to their entrance into military service. See *Lyman* v. *Adorno, supra,* 521. This classification has a reasonable relation to a permissible public purpose and is a constitutionally permissible method of deal-

ing differently with different classes of people. See *Tough* v. *Ives,* 162 Conn. 274, 292, 294 A.2d 67 (1972); *Lyman* v. *Adorno,* supra.

In view of our conclusion that the domicile requirement is constitutional, we need not reach the plaintiff's claim that the requirement is severable from the veterans' bonus benefits.

There is no error.

In this opinion COTTER, C. J., and LOISELLE, J., concurred.

BOGDANSKI, J. (concurring). In essence the plaintiff claims that the one year *durational residency* requirement to receive Connecticut's Vietnam bonus constitutes an unconstitutional infringement on his right to travel. In order to challenge such a residency requirement, however, it is incumbent upon the plaintiff to show that he was a resident of Connecticut at some point in time during that period of one year prior to induction. In other words, he must show that he is a member of the class allegedly adversely affected by the restriction. In this connection it may be noted that the usual challenge to residency requirements in the right to travel cases is brought by a resident plaintiff who complains that he must wait too long to receive some benefit or privilege from the state, such as the right to vote, welfare, medical assistance and the like. Since it is undisputed that the plaintiff was not at any time prior to his induction a resident of Connecticut, he has no standing to pursue this attack.

Even if we assume that Connecticut's residency requirement of one year is invalid, it cannot be disputed that a condition of bona fide residency for

eligibility for receipt of a benefit conferred by the state would withstand a constitutional challenge. See *Memorial Hospital* v. *Maricopa County*, 415 U.S. 250, 255, 94 S. Ct. 1076, 39 L. Ed. 2d 306 (1974). The requirement that one must be a resident of Connecticut at the time of induction in order to be eligible for a bonus is not only legitimate, it is necessary. A statute authorizing the payment of a veteran's bonus lacking such a requirement would be subject to attack by a taxpayer on the ground that public funds may not be used to benefit those who served in the quota of other states when it is made without regard to disability or indigency. See *Beach* v. *Bradstreet*, 85 Conn. 344, 82 A. 1030 (1912); *Lyman* v. *Adorno*, 133 Conn. 511, 521, 52 A.2d 702 (1947). Since the plaintiff was not a resident of Connecticut at the time of his induction he is not entitled to a veteran's bonus.

I therefore conclude that (1) the plaintiff has no standing to challenge the durational residency requirement because he was not a resident of Connecticut at the time of induction and (2) a requirement of bona fide residency for receipt of a state benefit is constitutional.

PETERS, J. (concurring). The majority opinion concludes that the residence requirement contained in § 27-140a is not a requirement of the type that has been held to have some impact on the right of interstate travel. I do not agree.

The eligibility criteria contained in § 27-140a discriminate between old residents of Connecticut and new residents, between those who were domiciled here more than one year before they entered upon military service and those who were domiciled here

less than one year at the time of entry. The issue is not the validity of bona fide residence requirements, whose constitutionality the Supreme Court of the United States has repeatedly upheld. See *Memorial Hospital* v. *Maricopa County,* 415 U.S. 250, 255, 94 S. Ct. 1076, 39 L. Ed. 2d 306 (1974); *Dunn* v. *Blumstein,* 405 U.S. 330, 342 n.13, 92 S. Ct. 995, 31 L. Ed. 2d 274 (1972). Rather the issue is the validity of coupling residence requirements with time-bound constraints that result in making some residents more equal than others. I do not believe that § 27-140a is immunized from constitutional scrutiny simply because its one year period is not a waiting period but is an outright prohibition that imposes an incurable, irremediable obstacle to the rights of the applicant. An outright prohibition has, to my mind, as much of a potential for a deterrent effect on travel as a temporary prohibition that time will cure. See *Memorial Hospital* v. *Maricopa County,* supra, 257-58; *Dunn* v. *Blumstein,* supra, 338-42; *Shapiro* v. *Thompson,* 394 U.S. 618, 629-31, 89 S. Ct. 1322, 22 L. Ed. 2d 600 (1969). It is analogous to the permanent irrebuttable presumption of nonresidence that was struck down as violative of the fourteenth amendment in *Carrington* v. *Rash,* 380 U.S. 89, 96, 85 S. Ct. 775, 13 L. Ed. 2d 675 (1965).

Nonetheless, I do not believe that this applicant can satisfy the second branch of the right-to-travel cases. A statute will be subject to strict constitutional scrutiny only if its eligibility requirements not only deter migration but do so by imposing what can be characterized as "penalties upon the exercise of the constitutional right of interstate travel." *Shapiro* v. *Thompson,* supra, 638 n.21; *Memorial Hospital* v. *Maricopa County,* supra, 258-61; *Dunn* v. *Blumstein,* supra, 335. The right to receive a

veteran's bonus is readily distinguishable from such fundamental governmental privileges or benefits as the right to vote, to welfare, or to medical assistance. Less essential forms of governmental entitlements, such as the right to reduced tuition at state universities; *Vlandis* v. *Kline,* 412 U.S. 441, 452–53 n.9, 93 S. Ct. 2230, 37 L. Ed. 2d 63 (1973); require less by way of constitutional justification. Because there is no fundamental right to a bonus, the constitutionality of § 27-140a must be tested for its rational basis, rather than for its compelling state interest.

The question of the constitutionality of § 27-140a must therefore be resolved by determining whether the statute's domiciliary requirement bears a rational relationship to a legitimate state purpose. I find this determination to be an extremely close question. I am profoundly troubled that the legislature would reward a former domiciliary, who left the state immediately upon entry into military service, and fail to reward a person domiciled here upon the date of his enlistment who subsequently continued to maintain his residence in this state. But see *Lyman* v. *Adorno,* 133 Conn. 511, 52 A.2d 702 (1947). As Justice Bogdanski notes, however, this applicant had no connection whatsoever with this state at the time of his entry into West Point, and, as to him, there is no failure of rational relationship.

I therefore concur in the result.