STATE OF CONNECTICUT *v.* CRAIG M. DAVIS
(11248)

PETERS, HEALEY, PARSKEY, SHEA and GRILLO, Js.

Argued February 9—decision released June 14, 1983

*James F. Bingham,* with whom, on the brief, was *Paul D. Shapero,* for the appellant (defendant).

*Frank S. Maco,* assistant state's attorney, with whom, on the brief, was *Donald A. Browne,* state's attorney, for the appellee (state).

ARTHUR H. HEALEY, J. On December 8, 1981, the defendant, Craig Davis, entered a plea of nolo contendere to one count of second degree kidnapping in violation of General Statutes § 53a-94 (a), one count of first degree sexual assault in violation of General Statutes § 53a-70 (a) and one count of third degree robbery in violation of General Statutes § 53a-135 (a). The Superior Court, *McKeever, J.,* accepted Davis' plea on that date. At the time of entering his plea, Davis also filed a motion, pursuant to General Statutes § 17-244,[1] to be examined at the Whiting Forensic In-

---

[1] General Statutes § 17-244 provides: "(a) Except as provided in section 17-255 any court prior to sentencing a person convicted of an offense for which the penalty may be imprisonment in the Connecticut Correctional Institution at Somers, or of a sex offense involving (1) physical force or violence, (2) disparity of age between an adult and a minor or (3) a sexual act of a compulsive or repetitive nature, may if it appears to the court that such person is mentally ill and dangerous to himself or others, upon its own motion or upon request of any of the persons enumerated in subsection (b) of this section and a subsequent finding that such request is justified, order the commissioner to conduct an examination of the convicted defendant by qualified personnel of the institute. Upon completion of such examination the examiner shall report in writing to the court. Such report shall indicate whether the convicted defendant should be committed to· the diagnostic unit of the institute for additional examination or should be sentenced in accordance with the conviction. Such examination shall be conducted and the report made to the court not later than fifteen days after the order for the examination. Such examination may be conducted at a correctional facility if the defendant is confined or it may be conducted on an outpatient basis at the institute or other appropriate location. If the report recommends additional examination at the diagnostic unit, the court may, after a hearing, order the convicted defendant committed to the diagnostic unit of the institute for a period not to exceed sixty days, except as provided in section 17-245 provided the hearing may be waived by the defendant. Such commitment shall not be effective until the director certifies to the court that space is available at the diagnostic unit. While confined in said diagnostic unit, the defendant shall be given a complete physical and psychiatric examination by the staff of the unit and may receive medication and treatment without his consent. The director shall have authority to procure all court records, institutional records and probation or other reports which provide information about the defendant.

"(b) The request for such examination may be made by the state's attorney or assistant state's attorney who prosecuted the defendant for

stitute. This motion was granted by the court, and sentencing was postponed until after the institute had filed its report with the court.

The sentencing hearing was held on January 22, 1982. The report from the institute was received by Davis' counsel on January 21, 1982, one day before the hearing. The report concluded that "the present examination provides no evidence of the need for additional diagnostic assessment and/or in-patient treatment at the mental health facility at this time. It is, therefore, the opinion of these examiners that this young man [Davis] does not meet the statutory criteria for commitment (under C.G.S. 17-244 [a])." At the hearing, Davis requested that sentencing be continued for one week in order to bring in the two people who signed the report from the Whiting Forensic Institute as well as a doctor from the Yale Psychiatric Center who had treated Davis. Davis' counsel stated to the court that he had planned to bring these three people to the hear-

---

an offense specified in this section, or by the defendant or his attorney in his behalf. If the court orders such examination, a copy of the examination order shall be served upon the defendant to be examined.

"(c) Upon completion of the physical and psychiatric examination of the defendant, but not later than sixty days after admission to the diagnostic unit, a written report of the results thereof shall be filed in triplicate with the clerk of the court before which he was convicted, and such clerk shall cause copies to be delivered to the state's attorney and to counsel for the defendant.

"(d) Such report shall include the following: (1) A description of the nature of the examination; (2) a diagnosis of the mental condition of the defendant; (3) an opinion as to whether the diagnosis and prognosis demonstrate clearly that the defendant is actually dangerous to himself or others and requires custody, care and treatment at the institute; and (4) a recommendation as to whether the defendant should be sentenced in accordance with the conviction, sentenced in accordance with the conviction and confined in the institute for custody, care and treatment, placed on probation by the court or placed on probation by the court with the requirement, as a condition to probation, that he receive outpatient psychiatric treatment."

ing but was unable to do so because the report was only received the day before, leaving him no time to contact the individuals. The state objected to the request for a continuance on two grounds. First, it claimed that the report was unequivocal in its opinion, rendering it unnecessary to have a hearing. It claimed further that there was no authority under the statute to conduct such a hearing. The court, *Ment, J.,* denied the request for a continuance without stating its grounds. After hearing a number of witnesses for both the state and the defendant testify as to the most appropriate sentence, the court imposed a total effective sentence of not less than ten nor more than twenty years to serve.

On February 1, 1982, Davis appealed his sentence to this court. On the same day, he moved in the trial court to open judgment and for reasonable bail pending appeal. The defendant alleged four grounds in the motion to open: the court's previous refusal to grant a continuance; the court's acceptance of the report from the Whiting Forensic Institute, when the report made no mention in its recommendation regarding the appropriateness of outpatient care as mandated by General Statutes § 17-244; the court's failure to hold a hearing on the report pursuant to General Statutes § 17-245,[2]

---

[2] General Statutes § 17-245 provides: "(a) If the report recommends that the defendant be sentenced in accordance with the conviction, placed on probation by the court or placed on probation by the court with the requirement, as a condition of such probation, that he receive outpatient psychiatric treatment, the defendant shall be returned directly to the court for disposition. If the report recommends sentencing in accordance with the conviction and confinement in the institute for custody, care and treatment, then during the period between the submission of the report and the disposition of the defendant by the court such defendant shall remain at the institute and may receive such custody, care and treatment as is consistent with his medical needs.

"(b) If the report recommends confinement at the institute for custody, care and treatment, the court shall set the matter for a hearing not later

which mandates such a hearing when confinement is recommended; and, finally, the court's imposition of the sentence which he claimed, under the present state of the record, amounted to cruel and unusual punishment. On February 17, 1982, a hearing on the matter was held.

In regard to the motion to open the judgment, the defendant claimed then for the first time that the Whiting report did not comply with the requirements of the statute because it did not make any recommendation regarding the propriety of ordering that Davis be placed on probation.[3] The defendant went on to claim that this failure constituted a denial of his due process rights. He also claimed then for the first time that his

than fifteen days after receipt of the report. Any evidence, including the report ordered by the court, regarding the defendant's mental condition may be introduced at the hearing by either party. Any staff member of the diagnostic unit who participated in the examination of the defendant and who signed the report may testify as to the contents of the report. The defendant may waive the court hearing.

"(c) If at such hearing the court finds the defendant is not in need of custody, care and treatment at the institute, it shall sentence him in accordance with the conviction or place him on probation. If the court finds that such person is in need of outpatient psychiatric treatment, it may place him on probation on condition that he receive such treatment. If the court finds such person to be mentally ill and dangerous to himself or others and to require custody, care and treatment at the institute, it shall sentence him in accordance with the conviction and order confinement in the institute for custody, care and treatment provided no court may order such confinement if the report does not recommend confinement at the institute. The defendant shall not be subject to custody, care and treatment under this part beyond the maximum period specified in the sentence."

[3] At the hearing on February 17, 1982, Davis' counsel stated that the failure of the report to comply with the statute "was the plain thrust of my sentencing argument." A fair reading of the transcript of the sentencing hearing, however, indicates that this claim was never brought to the attention of the trial court. The basis for the defendant's request for a continuance was not to enable the examiners at the Whiting Forensic Institute to prepare a report that complied with the statute. Rather, the only basis for the request was to bring in the examiners from the institute as well as a doctor from the Yale clinic.

due process rights had been violated by the trial court's refusal to grant a continuance in order to have a hearing on the recommendation contained in the report filed by the institute. Finally, he claimed, also for the first time, that the statute violated his constitutional rights because General Statutes § 17-245 allegedly allowed the state to remonstrate against the report, without making a similar provision for the defendant. After the state noted its objection to the motion to open, again based upon the unequivocal nature of the report, the court asked both parties whether they wished to address the issue of the court's authority to open the matter. Counsel for the defendant replied that "under the general authority in the Superior Court, any judgment may be reopened within a reasonable period of time." The court then denied the motion to open the judgment. Davis amended his preliminary statement of issues so as to include this decision.[4]

On appeal, the defendant has briefed two issues.[5] As stated by the defendant, the first issue is whether "due process requires that at the time of sentencing, the accused be present with counsel, have an opportunity to be heard, be confronted with witnesses against him, have the right to cross examine and to offer evidence of his own." Although not stated explicitly, it is evident from the defendant's brief, as well as from that

---

[4] In his amended preliminary statement of the issues, Davis also included the trial court's denial of his motion for reasonable bail pending appeal. The trial court, however, reserved decision on this motion. The record does not indicate any action taken by the court in regard to this matter. Furthermore, although the claim was included in the defendant's brief as part of his "Statement of Issues," it was never addressed in the body of the brief. Therefore, it will not be considered.

[5] The issue of whether the sentence imposed amounted to cruel and unusual punishment has not been briefed by the defendant and is considered abandoned. *State* v. *Daniels,* 180 Conn. 101, 104, 429 A.2d 813 (1980); *Burritt Mutual Savings Bank* v. *Transamerica Ins. Co.,* 180 Conn. 71, 82n, 428 A.2d 333 (1980).

of the state, that the defendant has included in this issue the claimed failure of the report to make a recommendation regarding probation.[6] The second issue briefed by the defendant is whether "the failure [of General Statutes § 17-245 (b)] to mandate a full hearing is a capricious classification which requires that the statute . . . be held unconstitutional." Finally, we note that the "due process provisions of the federal [U.S. Const., amend. XIV § 1] and Connecticut [Conn. Const., art. I § 8] constitutions have a common meaning so as to permit us to treat the questions on appeal as a single issue." (Citations omitted.) *State* v. *Pickering,* 180 Conn. 54, 55 n.1, 428 A.2d 322 (1980).

Prior to considering the merits of the defendant's claims, we must review the procedural posture in which this case has come before us. Specifically, we must address the authority of the trial court to open the judgment in this case.

We begin by noting that pursuant to Practice Book § 3063, this court is not bound to consider any claim unless it was distinctly raised in the trial court. The only claim made at the time of sentencing on January 22, 1982, was the court's refusal to grant a continuance in order to hold a hearing on the report filed by the Whiting Forensic Institute. No constitutional basis for this hearing on the Whiting report was advanced at that time. Furthermore, there is no statutory requirement that such a hearing be held. Therefore, the trial court did not err in refusing to grant a continuance to hold this hearing.

The first time the issues briefed in this appeal were brought to the attention of the trial court was at the

---

[6] The defendant has also raised for the first time on appeal three other defects in the report. Because these alleged defects were not raised in the trial court, we will not consider them. Practice Book § 3063.

hearing on the motion to open the judgment on February 17, 1982. No authority was cited by the defendant as to the trial court's authority to act at that time. Rather, at the hearing, counsel for the defendant merely alluded to "the general authority in the Superior Court. . . ." Overlooked by both parties is the fact that there are two Practice Book rules on point. Section 934 provides: "At any time during the period of a definite sentence, the judicial authority may, after a hearing and for good cause shown, reduce the sentence or order the defendant discharged or released on probation or on a conditional discharge for a period not to exceed that to which he could have been sentenced originally." Section 935 provides: "The judicial authority who sentenced the defendant may, within ninety days, correct an illegal sentence or other illegal disposition, or he may correct a sentence imposed in an illegal manner or any other disposition made in an illegal manner."

The sentence imposed by the trial court in this case was not illegal. Pursuant to General Statutes §§ 53a-35 and 53a-37, the length of the sentence was within the permissible range for the crimes charged. See *Green* v. *Warden,* 178 Conn. 634, 639, 425 A.2d 128 (1979); *State* v. *Kreminski,* 178 Conn. 145, 153, 422 A.2d 294 (1979); *State* v. *Williams,* 173 Conn. 545, 558, 378 A.2d 588 (1977); compare *State* v. *Campbell,* 180 Conn. 557, 429 A.2d 960 (1980); *Salsbury* v. *Robinson,* 30 Conn. Sup. 144, 305 A.2d 286 (1972); *Wiggins* v. *Robinson,* 30 Conn. Sup. 54, 299 A.2d 189 (1972); *Liberti* v. *York,* 28 Conn. Sup. 9, 246 A.2d 106 (1968). Because the sentence was not illegal, the court's authority to open the judgment was limited by the application of Practice Book § 934. That section permits the trial court,

in its discretion, to reduce or modify the sentence[7] only after the defendant has shown good cause for taking such action. This court will find reversible error, therefore, only if it can be demonstrated that it was an abuse of discretion to find that the standard had not been met in this case.

Although "good cause" might have been shown if the defendant had established that the sentencing proceedings on January 22, 1982, violated his constitutional rights, we cannot conclude that any such violation occurred in this case. Therefore, we affirm the decision of the trial court.

The fourteenth amendment provides, in part, "nor shall any State deprive any person of life, liberty or property, without due process of law . . . ." The interest at stake in the present proceeding is Davis' liberty interest. There are two elements which must be established in order to find a due process violation. First, because not every liberty interest is protected, Davis must establish that he has a liberty interest that comes within the ambit of the fourteenth amendment. *Hewitt* v. *Helms,* 459 U.S. 460, 466, 103 S. Ct. 864, 74 L. Ed. 2d 675 (1983); *Meachum* v. *Fano,* 427 U.S. 215, 223-24, 96 S. Ct. 2532, 49 L. Ed. 2d 451, reh. denied, 429 U.S. 873, 97 S. Ct. 191, 50 L. Ed. 2d 155 (1976); *Board of Regents* v. *Roth,* 408 U.S. 564, 571, 92 S. Ct. 2701, 33 L. Ed. 2d 548 (1972); *Society for Sav-*

---

[7] Although the defendant entitled his motion as a "Motion to Reopen Judgment," we find Practice Book § 934 controlling. First, "[i]n a criminal case the imposition of sentence is the judgment of the court." *State* v. *Nardini,* 187 Conn. 109, 123, 445 A.2d 304 (1982), citing *State* v. *Moore,* 158 Conn. 461, 463, 262 A.2d 166 (1969). It is the sentence, therefore, and not the acceptance of his plea which the defendant seeks to "reopen." Furthermore, as has been noted, the trial court imposed a legal sentence. Therefore, although the defendant sought to "reopen" the sentence, the only relief available was a reduction or a modification of that sentence. These are the remedies provided in Practice Book § 934.

*ings* v. *Chestnut Estates, Inc.,* 176 Conn. 563, 571, 409 A.2d 1020 (1979). If it is determined that a protected liberty is implicated, then the second element that must be addressed is what procedural protections are "due." *Goss* v. *Lopez,* 419 U.S. 565, 577, 95 S. Ct. 729, 42 L. Ed. 2d 725 (1975); *Board of Regents* v. *Roth,* supra, 569–70; *Morrissey* v. *Brewer,* 408 U.S. 471, 481, 92 S. Ct. 2593, 33 L. Ed. 2d 484 (1972); see *Williams* v. *Bartlett,* 189 Conn. 471, 477, 457 A.2d 290 (1983). Finally, it should be noted that the due process clause only prevents the state from acting in derogation of a protected interest. *Vitek* v. *Jones,* 445 U.S. 480, 489, 100 S. Ct. 1254, 63 L. Ed. 2d 552 (1980); *Meachum* v. *Fano,* supra, 224; *Wolff* v. *McDonnell,* 418 U.S. 539, 557, 94 S. Ct. 2963, 41 L. Ed. 2d 935 (1974). It is significant that this defendant, unlike the individuals seeking relief in such cases as *Vitek, Meachum* and *Wolff,* is not the focus of any *involuntary* deprivation of a right, but rather is himself *voluntarily* seeking the benefit of the statute.

"Liberty interests protected by the Fourteenth Amendment may arise from two sources—the Due Process Clause itself and the laws of the States." *Hewitt* v. *Helms,* supra, citing *Meachum* v. *Fano,* supra. We will consider first whether Davis has a liberty interest protected by the due process clause. It is important at this juncture to note the narrowness of the issue presented because of the circumstances of this case. In determining whether Davis has a liberty interest arising from the due process clause, the issue that must be resolved is whether a defendant, following a valid conviction, has a constitutional right to be sentenced to a particular type of facility. We hold that he does not.

The United States Supreme Court has specifically stated that "given a valid conviction, the criminal

defendant has been constitutionally deprived of his liberty to the extent that the State may confine him and subject him to the rules of its prison system so long as the conditions of confinement do not otherwise violate the Constitution. The Constitution does not require that the State have more than one prison for convicted felons; nor does it guarantee that the convicted prisoner will be placed in any particular prison if, as is likely, the State has more than one correctional institution. The initial decision to assign the convict to a particular institution is not subject to audit under the Due Process Clause, although the degree of confinement in one prison may be quite different from that in another. The conviction has sufficiently extinguished the defendant's liberty interest to empower the State to confine him in *any* of its prisons." (Emphasis in original.) *Meachum* v. *Fano,* supra, 224; see also *Vitek* v. *Jones,* supra, 493; *Greenholtz* v. *Nebraska Penal Inmates,* 442 U.S. 1, 7, 99 S. Ct. 2100, 60 L. Ed. 2d 668 (1979). Although the specific claim that a convicted defendant has a right to be placed in a mental hospital has not been analyzed under the language quoted from *Meachum,*[8] we believe that the reasoning employed by the court is determinative of this claim. The only limitation placed upon the state in confining a defendant in its prison system is that "the conditions of confinement [must] not otherwise violate the Constitution."

---

[8] In *Johnston* v. *State,* 152 Ga. App. 133, 262 S.E.2d 161 (1979), the court rejected a claim that a trial court's refusal to place a defendant convicted of a sex offense in a facility where he could receive psychiatric treatment was cruel and unusual punishment which violated the defendant's eighth amendment rights. In *Canfield* v. *State,* 506 P.2d 987 (Okla. Crim. App.), appeal dismissed, 414 U.S. 991, 94 S. Ct. 342, 38 L. Ed. 2d 230 (1973), reh. denied, 414 U.S. 1138, 94 S. Ct. 884, 38 L. Ed. 2d 763 (1974), the court held that no constitutional rights were implicated where a defendant was sentenced to a facility without psychiatric treatment services, because the decision as to where to place prisoners was a legislative determination.

*Meachum* v. *Fano,* supra. No such claim has been made here; therefore, the state is empowered "to confine him in *any* of its prisons."[9] (Emphasis in original.) Id.

---

[9] The cases cited in the defendant's brief which purportedly support the proposition that Davis was entitled to a hearing are inapposite because they do not address the issue raised in this case. In *Baxstrom* v. *Herold,* 383 U.S. 107, 86 S. Ct. 760, 15 L. Ed. 2d 620 (1966), the state was seeking to have a defendant committed to a mental hospital at the expiration of his criminal sentence without the jury review available to all other persons civilly committed in New York. The court held that such a procedure violated the defendant's rights under the equal protection clause of the fourteenth amendment. Id., 111. On this issue, therefore, this case stands for the principle that a defendant who is being involuntarily committed after serving his term, in which case the state no longer has a penal interest, has a right to procedural protections. In contrast, Davis is voluntarily seeking to be committed as an alternative to serving a prison sentence. There is no affirmative state action involved and no additional sentence being imposed.

Likewise, *Specht* v. *Patterson,* 386 U.S. 605, 87 S. Ct. 1209, 18 L. Ed. 2d 326 (1967), is another case in which the state was seeking to impose a potentially greater sentence than could be imposed based upon the crime with which the defendant had been convicted. The only prerequisite was that the trial court find the defendant to be an habitual offender and mentally ill. Id., 607. The defendant was convicted for indecent liberties under a statute carrying a maximum sentence of ten years. He was sentenced, however, pursuant to a sex offenders act, which carried an indefinite sentence from one day to life. Id. The court held that the issue of whether the defendant qualified as a sex offender was a distinct issue to which due process protections attached. Id., 610. Once again, in the present case, the state is not seeking to impose an additional penalty or to incarcerate the defendant under a different statute from that under which he was convicted; rather, Davis is voluntarily seeking alternative treatment. This also distinguishes the case of *State* v. *Warren,* 169 Conn. 207, 363 A.2d 91 (1975), cited by the defendant.

In *Lynch* v. *Overholser,* 369 U.S. 705, 82 S. Ct. 1063, 8 L. Ed. 2d 211 (1962), the court was faced with a statute which permitted a trial court automatically to confine a defendant to a hospital for the mentally ill if he is found not guilty by reason of insanity. The court held that where a defendant objects to the introduction of evidence regarding his sanity, if he is thereafter found not guilty by reason of insanity, he is then entitled to the procedures afforded a person being civilly committed. Id., 711. On this issue, therefore, this case stands for the proposition that to commit a person who insists that he is sane is, in effect, an involuntary commitment requiring procedural protections. It is not a case, as here, where the defendant is voluntarily seeking commitment after he has been convicted.

Finally, the two remaining cases cited by the defendant present no con-

The second source from which a liberty interest can arise is the law of a particular state. *Hewitt* v. *Helms,* supra. In the present case, Davis is seeking to be committed to the Whiting Forensic Institute or to be placed on probation so that he may receive outpatient therapy as an alternative to being sentenced to prison pursuant to General Statutes §§ 17-244 and 17-245. The determination of whether Davis' protected liberty interest has been implicated requires a showing that these statutes create a right to either alternative or a justifiable expectation that one of these alternatives would be afforded him. *Vitek* v. *Jones,* supra, 488–89; *Meachum* v. *Fano,* supra, 226–27; *Wolff* v. *McDonnell,* supra, 557. We hold that General Statutes §§ 17-244 and 17-245 do not create such an interest.

In *Vitek* v. *Jones,* supra, the court distinguished two types of statutes. The first involved the Nebraska statute under consideration there which *prohibited* the transfer of a prisoner from a prison to a mental hospital without a finding that the defendant was suffering from a mental illness for which he could not secure adequate treatment in the correctional institution. In this type of statute the court held that a justifiable liberty interest was created. The second type of statute was that found in *Meachum* v. *Fano,* supra, which left the decision to transfer prisoners to other facilities in the *discretion* of the prison authorities. In *Meachum,* because the prison authorities were empowered with a discretionary

---

stitutional issues. In *Cross* v. *Harris,* 418 F.2d 1095 (D.C. Cir. 1969), the court specifically stated: "We have not . . . here . . . decided any constitutional questions." Id., 1101. It, therefore, provides no support for the defendant. In *Leach* v. *United States,* 320 F.2d 670 (D.C. Cir. 1963), the court only held that the trial court abused its discretion by not ordering a psychiatric examination which was requested by the defendant and which was statutorily authorized. Id., 672–73. It did not hold that once the report was completed the defendant had any right to be placed in a particular type of facility.

determination, no justifiable expectation could arise. Id. We find the latter situation to be applicable to the particular statutes under consideration.

General Statutes § 17-244 permits a defendant to request that he be examined at the Whiting Forensic Institute. General Statutes § 17-244 (a). It also mandates that, after such a request is made and an examination performed, a report making a particular recommendation be filed with the trial court. General Statutes § 17-244 (c), (d) (4). Neither of these steps, however, gives a defendant a "justifiable expectation" that the trial court will follow the recommendation of the Whiting report. This is because General Statutes § 17-245 accords the trial court the discretion of whether or not to accept the recommendation. In effect, the report provides a sentencing aid to the court.

In summation, because no constitutionally protected liberty interest was implicated by the trial court's refusal to grant the defendant's request for a hearing on the report filed by the Whiting Forensic Institute, we hold that Davis was not deprived of any constitutional right. Therefore, we cannot conclude that, pursuant to Practice Book § 934, the trial court abused its discretion in not granting the defendant's motion to reopen the judgment.

In addition, we cannot find that the claimed failure of the report to comply with the statutory requirements is sufficient to meet the "good cause shown" standard of § 934.[10] As noted previously, the only claimed defect

---

[10] Because the defendant first raised the lack of statutory compliance at the hearing on the motion to reopen, we need not address the issue of whether a report must follow the requirements of the statute verbatim. This is because the crucial issue presented at the hearing on February 17, 1982, was not whether the report ritualistically followed the requirements of the statute; rather, that issue was whether there was "good cause" under Practice Book § 934 to open the judgment.

in the report that is properly before us is its failure to include a recommendation regarding the alternative of sentencing the defendant to a period of probation. Our examination of the Whiting report discloses that the opinion of the examiners was that the defendant should be sentenced in accordance with the conviction. See General Statutes § 17-244 (d) (4). Furthermore, the transcript of the sentencing hearing makes it clear that the trial court, which had the ultimate decision regarding sentencing, did not think probation was appropriate. The court stated: "There is no question that [Davis] must be incarcerated, no question whatsoever. . . . There was a statement . . . which struck me and that was that no matter how much counseling and treatment [Davis] may receive the doctor could not accurately predict whether or not he would repeat this terrible offense. For that reason alone, if for no other, he must be incarcerated." Under the circumstances, we cannot find that the defendant demonstrated "good cause" to modify his sentence. Therefore, the court did not abuse its discretion.

The final issue to be addressed is the defendant's claim that General Statutes § 17-245 (b) establishes a "capricious classification." This is based on the fact that the statute requires a hearing before the defendant is confined to Whiting, while not making any provision for a hearing where the report concludes that there is no basis for confinement. We have held that no liberty interest is implicated by sentencing Davis to serve his time in a correctional institution rather than at Whiting. Furthermore, Davis has not alleged that fundamental or suspect classifications are involved in the decision. Therefore, the "legislation will withstand constitutional attack if the distinction [established by the statute] is founded on a rational basis." *Laden* v. *Warden,* 169 Conn. 540, 543, 363 A.2d 1063 (1975); see

also *Leech* v. *Veterans' Bonus Division Appeals Board,* 179 Conn. 311, 313, 426 A.2d 289 (1979); *Liistro* v. *Robinson,* 170 Conn. 116, 124, 365 A.2d 109 (1976).

In *Vitek* v. *Jones,* supra, the court noted that confinement in a mental hospital entails "more than a loss of freedom from confinement." Id., 492. Because of the different nature of the confinement, the court held that the constitution required a hearing before the state could transfer a defendant from a correctional facility to a mental hospital. Id. The purpose of this hearing was to protect the defendant from the "stigmatizing consequences" of a transfer to a mental hospital. The same rationale can be found in General Statutes § 17-245 (b). The sole purpose of the hearing provided for in that section is not, as the defendant claims, to give the state the opportunity to remonstrate against the recommendation — although the state is entitled to do that. Rather, the provision for a hearing protects the statute from constitutional challenge which might otherwise arise if the state were permitted to confine a defendant involuntarily to Whiting without a prior hearing.

The considerations involved when a defendant is not going to be confined are totally different and justify the omission of holding any hearing. As we have noted, in this latter situation, a valid conviction extinguishes the defendant's right to be free from confinement and entitles the court or the state to place him in any of its prisons. *Meachum* v. *Fano,* supra. We hold that General Statutes § 17-245 (b) creates a rational classification designed as much to aid the defendant as it is to protect the rights of the state.

There is no error.

In this opinion PETERS, PARSKEY and GRILLO, Js., concurred.

344

SHEA, J. (concurring). I agree with the result and the essential holding of the court that the absence of any provision for a hearing to afford an opportunity for a defendant to contest a recommendation against commitment at the Whiting Forensic Institute in the report of the examining psychiatrists made pursuant to General Statutes § 17-244 does not violate any constitutional right. Since General Statutes §17-245 (b) makes a recommendation for confinement at the institute a prerequisite for a commitment there, the denial of the defendant's request for a continuance to bring in the examining psychiatrists for the purpose of disputing their recommendation was not an abuse of discretion.

I disagree, however, with the portion of the court's opinion which indicates that Practice Book § 934 rather than Practice Book § 935 provides the appropriate vehicle for remedying a deficiency in the sentence which has been imposed. Section 935 is not limited to the correction of an "illegal sentence or other illegal disposition," as the court assumes, but also authorizes correction within ninety days of sentences or other dispositions "imposed in an illegal manner." Practice Book § 935. The claim of error based upon the denial of the defendant's request for a continuance is essentially a claim that the sentence was "imposed in an illegal manner" by virtue of a procedural impropriety and is plainly cognizable under § 935. The nonconformity of the report with the requirements of § 17-244 (d), which the defendant also relied upon, was also a claimed violation of a sentencing procedure requirement and would qualify for consideration under § 935. Because the deficiencies in the report were not raised at the sentencing hearing, however, the defendant must be deemed to have waived them and the court did not err in refusing to open the judgment when the defendant later called them to its attention.

As both grounds upon which the defendant seeks relief in this appeal may be regarded as asserting that the sentence was "imposed in an illegal manner," § 935 was clearly applicable. I have no overwhelming concern about the pristine integrity of the rules of practice, but I am disturbed by the precedent being set in using the "good cause" standard for modification of a sentence in § 934 to attack the legality of a sentence. Section 934 allows modification of a sentence only by reducing it or ordering the defendant discharged or released on probation or on a conditional discharge. It presupposes a valid sentence to be modified. Unlike § 935, which requires any sentence correction to be made within ninety days, a limitation which the defendant in this case has met, § 934 allows modification at "any time during the period of a definite sentence." To allow § 934 to be employed for the purpose of considering claims which are cognizable under § 935 defeats the purpose of the provision limiting the time for seeking correction of a sentence alleged to be illegal. In my view, we have no need for this new avenue of post-conviction attacks upon judgments in addition to the right of appeal and the habeas corpus remedy.