RICARDO C. DeSANTIS ET AL. *v.* PICCADILLY
LAND CORPORATION ET AL.
(2653)

DUPONT, C.P.J., BORDEN and DALY, Js.

Argued December 12, 1984—decision released February 26, 1985

*Edward J. Markosky, Jr.,* for the appellant (defendant Julian Spiro).

*Gordon A. Evans,* with whom, on the brief, was *Richard H. Lamere,* for the appellees (plaintiffs).

DALY, J. The plaintiffs, Ricardo C. and Sandra DeSantis, instituted an action against the defendant Piccadilly Land Corporation (hereinafter Piccadilly), and two individual defendants, Julian Spiro and Abram Spiro, claiming breach of contract, fraudulent misrepresentation and wrongful disbursement of funds. From a judgment rendered against Piccadilly and against the defendant Julian Spiro (hereinafter Spiro),[1] Spiro has appealed.[2]

The trial court found the following facts: The defendant Julian A. Spiro was the president, treasurer, director and majority shareholder of Piccadilly. Prior to December 2, 1974, Spiro represented that Piccadilly was actively engaged in the construction of homes and that its financial status was sound. Relying on these representations, which proved to be false, the plaintiffs entered into a written agreement with Piccadilly on December 2, 1974, which provided that Piccadilly would build a home for the plaintiffs according to certain plans and specifications. The home was to be ready by mid-April, 1975. Pursuant to the agreement, the plaintiffs made an $8000 downpayment. After performing some site work and putting in the footings, Piccadilly ceased work on the home.

The court further found the following facts: Spiro made statements concerning Piccadilly's finances which he knew were untrue. Additionally, Piccadilly was not busy with the construction of homes as represented and

---

[1] As the defendant Abram Spiro is not involved in this appeal, all further references in this opinion to "Spiro" will indicate Julian Spiro.

[2] This appeal, originally filed in the Supreme Court, was transferred to this court. General Statutes § 51-199 (c).

was in financial straits at the time the agreement was signed. The agreement provided for the return of the $8000 if a satisfactory mortgage was not obtained by February 1, 1975. Spiro indicated that he had mortgage money available and would provide the necessary money to the plaintiffs as well as to any purchaser of the plaintiffs' residence.

Spiro maintained to the plaintiffs as late as May, 1975, that he was in good financial shape. At no time was it indicated that there were mortgages and liens against the property, even though the plaintiffs inquired about financial conditions. Most of Piccadilly's records were never produced. Spiro and Piccadilly were not solvent at the time of the signing of the agreement, despite Spiro's assertions to the contrary.

On May 13, 1983, the trial court rendered judgment for the plaintiffs against Spiro individually and against Piccadilly in the amount of $8000. It also awarded punitive damages to the plaintiffs, which were to be determined at a future hearing.

The court noted in its memorandum of decision that, although a claim for piercing the corporate veil was not made, the evidence offered at trial would support such a claim and it therefore permitted the plaintiffs to file an additional count to their complaint, alleging Spiro to be the dominator and alter ego of the corporation. The trial court found in favor of the plaintiffs against Spiro on this count in a supplemental memorandum of decision dated July 12, 1983. Spiro was ordered to pay interest on the $8000 awarded to the plaintiffs in the sum of $4396.44 as of May 13, 1983, plus punitive damages of $4132.15, office costs of $322.07 and court costs.

Spiro claims that the court erred in the following respects: (1) in concluding that Spiro was liable on the basis of fraud; (2) in concluding that Spiro was the alter

ego of Piccadilly; (3) in granting punitive damages; (4) in permitting the plaintiffs to amend their amended and substituted complaint many months after trial and after the memorandum of decision had been filed; and (5) in permitting the plaintiffs to introduce evidence of damages, costs and the expenses of litigation many months after the trial and subsequent to the filing of the memorandum of decision.

The proper standard for establishing fraud, employed by the trial court in this case, is by "clear and satisfactory evidence." We have held that such an enhanced civil standard means that the facts asserted are highly probably true, or that the probability of their truth is substantially greater than the probability of their falsity. *Clark* v. *Drska,* 1 Conn. App. 481, 487, 473 A.2d 325 (1984).

In determining liability on the basis of fraud, the court had to assess the credibility of the witnesses appearing before it. "Since the trier of fact is the ultimate judge of the credibility of witnesses, we may not pass upon the credibility of the witnesses." *State* v. *DeForge,* 194 Conn. 392, 398, 480 A.2d 547 (1984).

The trial court specifically found that Spiro was not a credible witness. There was clear and satisfactory evidence for the trial court to have concluded that Spiro continually misrepresented that he was financially solvent, that the corporation was solvent when it only had as assets a $10,000 checking account, that the corporation was building homes when others were not, that he failed to disclose numerous preexisting encumbrances and liens, and that he failed to produce vital corporate records.

We turn now to the claim that the court erred in concluding that Piccadilly and Spiro were alter egos. "Generally, a corporation is a distinct legal entity and the stockholders are not personally liable for the acts and

obligations of the corporation. . . . Courts will, however, disregard the fiction of a separate legal entity to pierce the shield of immunity afforded by the corporate structure in a situation in which the corporate entity has been so controlled and dominated that justice requires liability to be imposed on the real actor. . . . We have affirmed judgments disregarding the corporate entity and imposing individual stockholder liability when a corporation is a mere instrumentality or agent of another corporation or individual owning all or most of its stock." (Citations omitted.) *Saphir* v. *Neustadt,* 177 Conn. 191, 209, 413 A.2d 843 (1979).

The record before us reasonably supports the court's findings that Piccadilly was a corporation in name only and that it was operated as the instrumentality or alter ego of Spiro, subject to his sole control. As such, Piccadilly's activity was not indicative of corporate activity, but was symptomatic of the business operations of an individual. Spiro was the president, treasurer, director and majority shareholder of Piccadilly. He ran the business, fully controlled it, and alone made all its decisions.

In view of those facts, the court could reasonably conclude that Spiro completely dominated the corporation to the point where Piccadilly had no separate existence. Moreover, the court could conclude that there existed a unity of interest and ownership between Piccadilly and Spiro such that the purposes of justice would be served by disregarding the shield of Piccadilly's corporate structure. In short, we find no error in the court's conclusions imposing liability on Piccadilly and on Spiro individually. *Saphir* v. *Neustadt,* supra, 211. Additionally, we cannot disturb a finding based on a determination of the credibility of witnesses. *Zapolsky* v. *Sacks,* 191 Conn. 194, 201, 464 A.2d 30 (1983).

In an action for fraud, the plaintiffs are entitled to punitive damages, in addition to general and special damages. *Brower* v. *Perkins,* 135 Conn. 675, 680–81, 68 A.2d 146 (1949). The purposes of awarding punitive damages is not to punish the defendant for his offense, but to compensate the plaintiff for his injuries. *Doroszka* v. *Lavine,* 111 Conn. 575, 577–78, 150 A. 692 (1930). The rule in this state as to torts is that punitive damages are awarded when the evidence shows a reckless indifference to the rights of others or an intentional and wanton violation of those rights. *Collens* v. *New Canaan Water Co.,* 155 Conn. 477, 489, 234 A.2d 825 (1967).

The plaintiffs alleged that wanton, wilful and false representations had been made by Spiro, and the court found that the evidence adduced substantiated this allegation. The trial court was made aware that the plaintiffs' case was being handled on a contingency fee basis (33⅓ percent) and permitted the plaintiffs to offer evidence before it assessed the amount of punitive damages. Once again, this presented a factual situation for the trial court, and the court's conclusion does not merit reversal.

"The policy of our courts in allowing amendments to pleadings is liberal, but ordinarily whether or not one will be allowed rests in the discretion of the trial court." *Benson* v. *Morey,* 129 Conn. 390, 391, 28 A.2d 843 (1942). In response to Spiro's argument that the amendment was improper, we note "that a trial court may allow, in its discretion, an amendment to pleadings before, during, or, as here, after trial to conform to the proof." *Saphir* v. *Neustadt,* supra, 206.

Judicial discretion is always legal discretion exercised according to recognized principles of equity. " 'While its exercise will not ordinarily be interfered with on appeal to this court, reversal is required where the

abuse is manifest or where injustice appears to have been done.' " *Sturman* v. *Socha,* 191 Conn. 1, 7, 463 A.2d 527 (1983). "To require reversal, the error committed must be harmful. . . . To be harmful, an error must be so fundamental and material that it may work injustice." *Bell* v. *Bihary,* 168 Conn. 269, 273, 362 A.2d 963 (1975). The test is whether the variance misled or prejudiced Spiro on the merits of the case. *Antonofsky* v. *Goldberg,* 144 Conn. 594, 599, 136 A.2d 338 (1957).

There was sufficient evidence already before the trial court when it permitted the "alter ego" amendment concerning Spiro's control of Piccadilly. Hence, Spiro was not surprised by new evidence. Under the second count, Spiro had already been found to come within the provisions of *Scribner* v. *O'Brien, Inc.,* 169 Conn. 389, 404, 363 A.2d 160 (1975), which provides: "It is also true that an officer of a corporation does not incur personal liability for its torts merely because of his official position. Where, however, an agent or officer commits or participates in the commission of a tort, whether or not he acts on behalf of his principal or corporation, he is liable to third persons injured thereby."

We find no abuse of discretion in the court's action and, thus, the court did not err in allowing the amendment.

When we review the exercise of discretion by the trial court, every reasonable presumption will be given in favor of the correctness of its ruling. On appellate review, therefore, the ultimate issue is whether the court could reasonably conclude as it did, or whether, according to recognized principles of equity, abuse or discretion is manifest or an injustice appears to have been done. *Reynolds* v. *Ramos,* 188 Conn. 316, 320–21, 449 A.2d 182 (1982). Inasmuch as the trial court, in its original memorandum of decision, specifically provided that "punitive damages [are] to be hereafter deter-

mined at a further hearing limited to such damages," we find no error in the presentation of such evidence thereafter.

There is no error.

In this opinion the other judges concurred.

