STATE OF CONNECTICUT *v.* CHARLES A. MERDINGER
(11082)

LAVERY, SCHALLER and SPEAR, Js.

Argued November 8, 1994—decision released March 28, 1995

*George C. Springer, Jr.*, special public defender, for the appellant (defendant).

*Leon F. Dalbec, Jr.*, assistant state's attorney, with whom, on the brief, were *Eugene Callahan*, state's attorney, and *Warren C. Murray*, assistant state's attorney, for the appellee (state).

SPEAR, J. The defendant appeals from a judgment of conviction, after a jury trial, of eight counts of failure to pay wages in violation of General Statutes § 31-71b.[1] The defendant claims that (1) § 31-71b is unconstitutional, (2) the trial court improperly failed to instruct the jury that § 31-71b requires proof of an intent not

---

[1] General Statutes § 31-71b provides: "WEEKLY PAYMENT OF WAGES. (a) Except as otherwise provided in section 12-34b, each employer, by himself, his agent or representative, shall pay weekly all moneys due each employee on a regular pay day, designated in advance by the employer, in cash, by negotiable checks or, upon an employee's written request, by credit to such employee's account in any bank which has agreed with the employer to accept such wage deposits.

"(b) The end of the pay period for which payment is made on a regular pay day shall be not more than eight days before such regular pay day, provided, if such regular pay day falls on a nonwork day, payment shall be made on the preceding work day."

to pay wages and (3) the trial court improperly denied his motion for judgment of acquittal because the state failed to prove such intent and failed to prove that he was an employer pursuant to § 31-71b.

The jury reasonably could have found the following facts. Kristen Whiting began working as a waitress in May, 1990, at the Viva Zappata Restaurant in Westport. The restaurant was owned by a corporation known as the Mexican Cafe of Westport, Inc. The defendant, Charles A. Merdinger, was the president and sole stockholder of the corporation and had operated the restaurant for twenty-two years. Lynn McQuillan was employed by the corporation as the permittee, but she was neither an officer nor director and had no interest in the corporation. While Whiting worked as a waitress, she was paid her wages by check and tips in cash. Beginning on July 4, 1990, she commenced work as a bartender and was paid by check for two weeks. Thereafter, she was paid $150 in cash at the end of each evening through the end of August, 1990. In late August, the employer stopped paying Whiting in cash at the end of each day. She thereafter received the tips that she earned in cash and was to be paid by check for the hours worked.

For eight weeks, Whiting filled out a time card at the end of each day and made a copy for herself. During that eight week period, Whiting received her tip money, however, she did not receive a weekly paycheck. Whiting ceased working for the restaurant on October 25, 1990, and attempted to collect her past due wages on several occasions without success. Between October 25 and March 24, 1991, she made at least ten requests to McQuillan for the past due wages. There were occasions when the defendant was present when Whiting asked McQuillan for her back wages.

Whiting finally received her wages in full approximately eleven months after she ceased working at the restaurant. The defendant was thereafter arrested and convicted for failing to pay wages during the eight week period in violation of § 31-71b. This appeal followed.

The defendant's first three claims are intertwined as each turns on the constitutionality of the statute. We will discuss the claims together as the resolution of one resolves all.

I

The defendant claims that § 31-71b is unconstitutional because the statute does not prescribe a requisite mens rea, specifically, intent not to pay wages is not an element of the crime. Accordingly, he argues that the statute passes constitutional muster only if it is read as requiring that the state prove an intent to do the prohibited act (nonpayment of wages).

A party who challenges the constitutionality of a statute "bears the heavy burden of proving its unconstitutionality beyond a reasonable doubt and we indulge in every presumption in favor of the statute's constitutionality." *State* v. *Breton*, 212 Conn. 258, 269, 562 A.2d 1060 (1989); see *Fleming* v. *Garnett*, 231 Conn. 77, 88, 646 A.2d 1308 (1994). We, therefore, conduct our analysis of the constitutionality of § 31-71b with the defendant's heavy burden of proof in mind.

It is well established that a criminal statute is not necessarily unconstitutional because it imposes strict liability. "[P]ublic policy may require that in the prohibition or punishment of particular acts it may be provided that he who shall do them shall do them at his peril and will not be heard to plead in defense good faith or ignorance." *Shevlin-Carpenter Co.* v. *Minnesota*, 218 U.S. 57, 70, 30 S. Ct. 663, 54 L. Ed. 930 (1910). "The constitutional requirement of due process is not vio-

lated merely because mens rea is not a required element of a prescribed crime." *United States* v. *Greenbaum*, 138 F.2d 437, 438 (3d Cir. 1943).

The defendant argues, despite these principles, that § 31-71b violates the due process clause of the fourteenth amendment to the constitution of the United States[2] because (1) it does not give fair notice of the conduct that will subject a person to the criminal sanctions of the statute,[3] (2) it is not reasonable to hold corporate officers, who delegate the responsibility for payroll to others, liable for the innocent mistakes or errors that result in an employee's not getting paid, (3) the conduct here was passive, and wholly passive conduct is not a proper basis for the imposition of criminal liability and (4) a criminal sanction was imposed on the defendant solely due to his status as an employer.

The defendant asserts, without analysis, that § 31-71b does not give fair notice of the proscribed conduct. This argument is without merit as the statutory requirements for regular payment of wages within a prescribed time period are clear and unambiguous. In addition, the jury reasonably could have found that prior to August, 1990, a field supervisor for the wage regulation division of the department of labor personally hand delivered a copy of § 31-71b to the defendant along with the department's regulations. Therefore, the defendant had actual notice of the requirements of the statute.

---

[2] The fourteenth amendment to the United States constitution provides in pertinent part: "[N]or shall any State deprive any person of life, liberty or property, without due process of law . . . ."

[3] The defendant also claims that § 31-71b is in violation of article first, § 8, of the constitution of Connecticut. The defendant offered no independent analysis of the state constitutional claim, therefore, we need not address it. See *State* v. *Robinson*, 227 Conn. 711, 721, 631 A.2d 288 (1993).

The defendant's claim that officers of companies should not be held liable for the innocent mistakes or errors of their employees overlooks the purpose of a regulatory statute such as § 31-71b. Under the defendant's reasoning, an officer could avoid the criminal sanctions of a regulatory statute by delegating responsibility to another. Were we to accept this line of reasoning, it would thwart the purpose of the statute.

The defendant's assertion that his passive conduct of not paying wages is insufficient to support a criminal conviction and his claim that he was convicted *solely* because of his status as an employer are untenable and not supported by any analysis. Criminal liability flows from the defendant's failure to pay wages, not his status as an employer.

The defendant's claim that his passive conduct is not punishable under the rationale of *Lambert* v. *California*, 355 U.S. 225, 78 S. Ct. 240, 2 L. Ed. 2d 228 (1957), is misplaced. "The due process limitation upon [imposing strict criminal liability], where the conduct involved is wholly passive, such as the failure of a convicted felon, with no notice of such a requirement, to register within a certain time after coming into a municipality having a criminal registration ordinance, is not applicable here." *State* v. *Kreminski*, 178 Conn. 145, 150, 422 A.2d 294 (1979), distinguishing *Lambert* v. *California*, supra, 228. Under the defendant's rationale, one could avoid the sanctions of most regulatory legislation by failing to do what the legislature requires and then claiming that such failure to comply is passive conduct and, therefore, not punishable. For example, an employer who failed to pay the legally mandated minimum wage could make such a claim.

The defendant claims, alternatively, that for the statute to be found constitutional we must read into it a requirement that the state must prove an intent to do

the prohibited act. The defendant concedes in his brief that the legislative history of the statute reveals that it was intended to assure the orderly payment of wages. The state correctly contends that this statute is one of strict criminal liability designed to eradicate the evil of nonpayment of wages even though those without an evil purpose might end up ensnared in its net.

In *Morissette* v. *United States*, 342 U.S. 246, 253–56, 72 S. Ct. 240, 96 L. Ed. 288 (1952), the Supreme Court espoused the reasoning behind imposing strict criminal liability for public welfare offenses, such as the one involved in this case. *Morissette* states: "While many of these [regulations on activities that affect public health, safety or welfare] are sanctioned by a more strict civil liability, lawmakers, whether wisely or not, have sought to make such regulations more effective by invoking criminal sanctions to be applied by the familiar technique of criminal prosecutions and convictions. This has confronted the courts with a multitude of prosecutions, based on statutes or administrative regulations, for what have been aptly called 'public welfare offenses.' These cases do not fit neatly into any of such accepted classifications of common-law offenses, such as those against the state, the person, property, or public morals. Many of these offenses are not in the nature of positive aggressions or invasions, with which the common law so often dealt, but are in the nature of neglect where the law requires care, or inaction where it imposes a duty. . . . In this respect, whatever the intent of the violator, the injury is the same, and the consequences are injurious or not according to fortuity. Hence, legislation applicable to such offenses, as a matter of policy, does not specify intent as a necessary element. The accused, if he does not will the violation, usually is in a position to prevent it with no more care than society might reasonably expect and

no more exertion than it might reasonably exact from one who assumed his responsibilities." Id., 254–56.

We conclude that this public welfare offense properly does not require a mens rea and imposes strict criminal liability. The defendant benefited from the labors of the employees of Viva Zappata and should reasonably be expected to conform to the wage payment laws.

The defendant cites *Morissette* v. *United States*, supra, 342 U.S. 256, for the proposition that criminal offenses against the public health, safety and welfare may dispense with intent *only* where the penalties for violating such provisions are relatively small. The defendant suggests that the penalties imposed here are so severe[4] as to preclude the offenses from being classified as strict liability public health or welfare offenses. While it is true that the *Morissette* court did state with respect to public welfare offenses that "penalties commonly are relatively small, and conviction does no grave damage to an offender's reputation." Id. We are not persuaded that General Statutes § 31-71g,[5] which provides for penalties of $200 to $1000 and not more than thirty days or both, does violence to this principle. The defendant offers no authority in support of his assertion that the statutory penalties are not "small" enough to justify dispensing with intent. The penalties actually imposed appear to have been based on the defendant's previous twenty convictions[6] of the same offense for

---

[4] In the present case the defendant was sentenced to 240 days in jail suspended after ninety days and fined $8000.

[5] At the time of these offenses, General Statutes (Rev. to 1989) § 31-71g provided: "PENALTY. Any employer or any officer or agent of an employer or any other person authorized by an employer to pay wages who violates any provision of sections 31-71a to 31-71i, inclusive, may be fined not less than two hundred nor more than one thousand dollars or imprisoned not more than thirty days or both for each offense."

[6] The state asserted the prior convictions and disposition in its brief and in oral argument without rebuttal by the defendant.

which he was fined and given a suspended sentence. The defendant also offers no authority for the proposition that we should consider the penalties actually imposed in determining the constitutionality of the statute. Accordingly, we decline to do so.

The defendant failed to show that § 31-71b is unconstitutional beyond a reasonable doubt, and we are not persuaded that § 31-71b requires proof of an intent to do the prohibited act. It necessarily follows that the trial court was not required to instruct the jury that the state was required to prove such intent, nor was the court required to grant the defendant's motion for judgment of acquittal because the state did not prove such intent.

## II

The defendant claims that the trial court improperly denied his motion for judgment of acquittal. He argues that the state failed to prove beyond a reasonable doubt that the defendant was Whiting's employer pursuant to General Statutes § 31-71a (1).[7] We disagree.

In reviewing a sufficiency of the evidence claim, we apply a two part test. "First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the jury reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt." (Internal quotation marks omitted.) *State* v. *Greenfield*, 228 Conn. 62, 76, 634 A.2d 879 (1993), quoting *State* v. *Traficonda*, 223 Conn. 273, 278,

---

[7] General Statutes § 31-71a (1) provides: " 'Employer' includes any individual, partnership, association, joint stock company, trust, corporation, the administrator or executor of the estate of a deceased person, the conservator of the estate of an incompetent, or the receiver, trustee, successor or assignee of any of the same, employing any person, including the state and any political subdivision thereof . . . ."

612 A.2d 45 (1992). The defendant argues that the state failed to prove (1) that he intended to do the prohibited act, i.e., failed to pay Whiting's wages, and (2) that he was an employer as defined by § 31-71a (1).[8]

The defendant argues that McQuillan's and the defendant's testimony shows that the defendant did not know about the wage dispute. As explained in the preceding section, the state does not have to prove intent because this is a strict liability offense. The defendant argues that there was no evidence that the defendant was Whiting's employer. We conclude from our review that there was sufficient evidence from which the jury reasonably could have inferred that the defendant was Whiting's employer. Corporations are included among the entities that may be "employers" pursuant to §§ 31-71a (1)[9] and 31-71g.[10] Section 31-71g provides that an officer of an employer corporation may be fined or jailed or both for violation of § 31-71b. The jury was entitled to find that the defendant was Whiting's employer on the basis of his status as president and sole stockholder of the corporation over a twenty-two year period. Therefore, the court properly denied the motion for judgment of acquittal.

The judgment is affirmed.

In this opinion the other judges concurred.