STATE OF CONNECTICUT *v.* JAROSLAW NANOWSKI
(AC 17647)

O'Connell, C. J., and Landau and Stoughton, Js.

Argued December 6, 1999—officially released February 15, 2000

*John T. Walkley*, special public defender, for the appellant (defendant).

*Denise B. Smoker*, assistant state's attorney, with whom, on the brief, were *Scott J. Murphy*, state's attorney, and *Paul Rotiroti*, assistant state's attorney, for the appellee (state).

*Opinion*

LANDAU, J. The defendant, Jaroslaw Nanowski, appeals from the judgment of conviction, rendered after a jury trial, of failure to pay wages in violation of General Statutes § 31-71c (a) and (b).[1] On appeal, the defendant claims that (1) General Statutes § 31-71a et seq.[2] is unconstitutional as applied to him, (2) if the statute is constitutional on its face, the trial court improperly (a) struck the defendant's mistake of law defense and (b) failed to instruct the jury that the state was required to prove criminal intent beyond a reasonable doubt, and (3) there was insufficient evidence to prove that the defendant, not the corporation, was legally responsible under § 31-71c. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. In late 1992, the defendant and two other individu-

---

[1] General Statutes § 31-71c provides in relevant part: "(a) Whenever an employee voluntarily terminates his employment, the employer shall pay the employee's wages in full not later than the next regular pay day, as designated under section 31-71b, either through the regular payment channels or by mail.

"(b) Whenever an employer discharges an employee, the employer shall pay the employee's wages in full not later than the business day next succeeding the date of such discharge. . . ."

[2] General Statutes § 31-71a et seq. concerns the general provisions regarding the payment of wages.

als founded American Investment Company, Inc. (corporation), pursuant to the laws of the state of Connecticut. The defendant, in addition to being the majority shareholder, was the president of the corporation and was responsible for its day-to-day operation. He also was responsible for the hiring and firing of personnel, and for signing and distributing paychecks. He told the corporation's employees that he owned the business and was the person in charge. The corporation's business was to help eastern European businesses obtain financing.

Between May and the end of September, 1995, six individuals employed to perform services for the corporation failed to receive compensation. In some instances, the defendant gave the employees paychecks that were returned for insufficient funds. In other instances, the defendant gave employees paychecks but asked them not to present the checks for payment until he advised them to do so. In yet other instances, the defendant did not give employees paychecks. The defendant made representations to the employees that they would be paid when funds were received from clients. Eventually, the employees left the corporation and never were paid for some or all of the services they rendered during the relevant period. They were owed $18,150. The employees, therefore, filed complaints with the department of labor.[3] The defendant subsequently was arrested and charged with failure to pay wages in violation of § 31-71c. Following his conviction, he was given a total effective sentence of ten years imprisonment, suspended after three years, and five years probation.

---

[3] When the defendant failed to respond to requests from a labor department investigator, the investigator prepared a warrant for the defendant's arrest, which was presented to the state's attorney's office.

I

The defendant's first claim is that § 31-71a et seq. is unconstitutional[4] as applied to him because the increased penalty for conviction imposed by the legislature in its 1993 amendments to General Statutes § 31-71g;[5] see Public Acts 1993, No. 93-392, § 4; requires that an inference of intent be read into § 31-71c, specifically, that one cannot be convicted of a crime without an element of mens rea. We do not agree.

"Before we begin our analysis, we note that [a] party who challenges the constitutionality of a statute bears the heavy burden of proving its unconstitutionality beyond a reasonable doubt and we indulge in every presumption in favor of the statute's constitutionality. . . . *Federal Deposit Ins. Corp.* v. *Voll*, 38 Conn. App. 198, 203, 660 A.2d 358 (1995); *State* v. *Merdinger*, 37 Conn. App. 379, 382, 655 A.2d 1167 [cert. denied, 233

---

[4] The defendant makes reference to the fourteenth amendment to the United States constitution. He has failed to present any analysis of his claim that § 31-71a violates the constitution of Connecticut. "Without a separately briefed and analyzed state constitutional claim, we deem abandoned the defendant's claim . . . ." (Internal quotation marks omitted.) *State* v. *Eady*, 249 Conn. 431, 435 n.6, 733 A.2d 112, cert. denied, 528 U.S. 1030, 120 S. Ct. 551, 145 L. Ed. 2d 428 (1999).

[5] General Statutes § 31-71g provides: "Any employer or any officer or agent of an employer or any other person authorized by an employer to pay wages who violates any provision of this part may be: (1) Fined not less than two thousand nor more than five thousand dollars or imprisoned not more than five years or both for each offense if the total amount of all unpaid wages owed to an employee is more than two thousand dollars; (2) fined not less than one thousand nor more than two thousand dollars or imprisoned not more than one year or both for each offense if the total amount of all unpaid wages owed to an employee is more than one thousand dollars but not more than two thousand dollars; (3) fined not less than five hundred nor more than one thousand dollars or imprisoned not more than six months or both for each offense if the total amount of all unpaid wages owed to an employee is more than five hundred but not more than one thousand dollars; or (4) fined not less than two hundred nor more than five hundred dollars or imprisoned not more than three months or both for each offense if the total amount of all unpaid wages owed to an employee is five hundred dollars or less."

Conn. 914, 659 A.2d 187] (1995). In addition to showing that [the statute] is unconstitutional beyond a reasonable doubt, the defendant must show that its effect or impact on him adversely affects a constitutionally protected right which he has. *Society for Savings* v. *Chestnut Estates, Inc.*, 176 Conn. 563, 569, 409 A.2d 1020 (1979). Finally, [w]hile the courts may declare a statute to be unconstitutional, our power to do this should be exercised with caution, and in no doubtful case. *Fair Cadillac-Oldsmobile Isuzu Partnership* v. *Bailey*, 229 Conn. 312, 316, 640 A.2d 101 (1994)." (Internal quotation marks omitted.) *Giordano* v. *Giordano*, 39 Conn. App. 183, 188–89, 664 A.2d 1136 (1995).

The constitutionality of § 31-71c was first challenged in *State* v. *Merdinger*, supra, 37 Conn. App. 382, in which the defendant claimed that the statute was unconstitutional because it did "not prescribe a requisite mens rea, specifically, intent not to pay wages is not an element of the crime." This court upheld the constitutionality of the statute, citing the seminal United States Supreme Court case on the issue, *Morissette* v. *United States*, 342 U.S. 246, 72 S. Ct. 240, 96 L. Ed. 288 (1952). In both *Merdinger* and this case, the defendants rely on the common-law rule that the commission of a crime always encompasses the notion of an evil will or intention to do wrong.[6] The defendant in the case before us acknowledges that there is a different class of laws that came into existence during the nineteenth century, primarily due to the Industrial Revolution, to protect the public health, welfare and safety. Violation of these regulatory laws became known as "public welfare offenses." Id., 255.

---

[6] "There is a presumption of mens rea in those crimes having their origin in the common law. *United States* v. *United States Gypsum Co.*, 438 U.S. 422, 437, 98 S. Ct. 2864, 57 L. Ed. 2d 854 (1978). . . . Because the crime [here] does not have its origins in the common law, the defendant is not entitled to this presumption." (Citation omitted.) *State* v. *Swain*, 245 Conn. 442, 454 n.16, 718 A.2d 1 (1998).

"While many of these duties are sanctioned by a more strict civil liability, lawmakers . . . have sought to make such regulations more effective by invoking criminal sanctions to be applied by the familiar technique of criminal prosecutions and convictions. This has confronted the courts with a multitude of prosecutions, based on statutes or administrative regulations . . . . These cases do not fit neatly into any of such accepted classifications of common-law offenses, such as those against the state, the person, property, or public morals. Many of these offenses are not in the nature of positive aggressions or invasions, with which the common law so often dealt, but are in the nature of neglect where the law requires care, or inaction where it imposes a duty. Many violations of such regulations result in no direct or immediate injury to person or property but merely create the danger or probability of it which the law seeks to minimize. While such offenses do not threaten the security of the state in the manner of treason, they may be regarded as offenses against its authority, for their occurrence impairs the efficiency of controls deemed essential to the social order as presently constituted. In this respect, whatever the intent of the violator, the injury is the same, and the consequences are injurious or not according to fortuity. Hence, legislation applicable to such offenses, as a matter of policy, does not specify intent as a necessary element." Id., 254–56.

"It is well established that a criminal statute is not necessarily unconstitutional because it imposes strict liability. [P]ublic policy may require that in the prohibition or punishment of particular acts it may be provided that he who shall do them shall do them at his peril and will not be heard to plead in defense good faith or ignorance. *Shevlin-Carpenter Co.* v. *Minnesota*, 218 U.S. 57, 70, 30 S. Ct. 663, 54 L. Ed. 930 (1910). The constitutional requirement of due process is not vio-

lated merely because mens rea is not a required element of a prescribed crime. *United States* v. *Greenbaum*, 138 F.2d 437, 438 (3d Cir. 1943)." (Internal quotation marks omitted.) *State* v. *Merdinger*, supra, 37 Conn. App. 382–83.

Although the defendant notes the legal philosophy and tenets explained in *Morissette* and *Merdinger*, he argues that his case is somehow different because the penalty imposed on him is more severe. "While the general rule at common law was that the scienter was a necessary element in the indictment and proof of every crime, and this was followed in regard to statutory crimes, even where the statutory definition did not in terms include it . . . [t]he legislature may, if it so chooses, ignore the common-law concept that criminal acts require the coupling of the evil-meaning mind with the evil-doing hand and may define crimes which depend on no mental element, but consist only of forbidden acts or omissions. . . . Whether or not a statutory crime requires mens rea or scienter as an element of the offense is largely a question of legislative intent to be determined from the general scope of the act and from the nature of the evils to be avoided." (Citation omitted; internal quotation marks omitted.) *State* v. *Swain*, 245 Conn. 442, 454, 718 A.2d 1 (1998).

The defendant acknowledges the public policy purpose of § 31-71a et seq. The "statute is one of strict criminal liability designed to eradicate the evil of nonpayment of wages even though those without an evil purpose might end up ensnared in its net." *State* v. *Merdinger*, supra, 37 Conn. App. 385. The defendant's position, however, is that the 1993 amendments to § 31-71g are unconstitutional because the legislation changed the character of the penalties prescribed for failure to pay wages from misdemeanor to felony. This change, the defendant argues, is contrary to dicta in

*Morissette.*[7] The defendant believes, therefore, that the greater penalty now imposed by § 31-71g requires the inference of a mens rea in § 31-71c.

Neither the United States Supreme Court nor our Supreme Court has held that the magnitude of the penalty determines the constitutionality of strict liability statutes. "There is a suggestion in some of the early cases dealing with police regulatory legislation not requiring any criminal intent that the penalties must be petty and not involve imprisonment. . . . The question left undecided in those cases, whether a provision for imprisonment necessarily implied a requirement of mens rea, has long been resolved in favor of the view that the abandonment of the element of intent depends upon the peculiar nature and quality of the offense and whether the penalty serves as an effective means of regulation. . . . [*State* v. *Kreminski,* 178 Conn. 145, 152, 422 A.2d 294 (1979)]." (Internal quotation marks omitted.) *State* v. *Swain,* supra, 245 Conn. 456; see also *United States* v. *Freed,* 401 U.S. 601, 607–10, 91 S. Ct. 1112, 28 L. Ed. 2d 356 (1971) (possession of unregistered firearm, crime punishable by ten years in prison, fine or both, strict liability offense).

Section 31-71g provides a regimen of increasingly severe fines and imprisonment, depending on the magnitude of the defendant's violation of § 31-71c. Here, the defendant was charged with six counts of failing to pay his employees. He owed six individuals compensation in amounts ranging from $1200 to $6500. The total owed was in excess of $18,000. The jury convicted the defendant on all six counts. The severity of his sentence was determined by the number and magnitude of the crimes he committed, not by the amendment to

[7] "Also, penalties commonly are relatively small, and conviction does no grave damage to an offender's reputation." *Morissette* v. *United States,* supra, 342 U.S. 256.

the statute. In its wisdom, our legislature enacted laws that regulate the payment of an employee's wages and prescribe the penalties for failing to do so. The defendant has failed to prove beyond a reasonable doubt that § 31-71a et seq. is unconstitutional.

## II

The defendant's second claim is that if §§ 31-71c (a) and 31-71g are constitutional on their face, the court improperly (1) struck his mistake of law defense and (2) failed to instruct the jury that the state was required to prove criminal intent beyond a reasonable doubt. We disagree.

## A

The defendant first claims that the court improperly struck his mistake of law defense.[8] The substance of the defendant's mistake of law defense is that he thought he personally was protected from prosecution under § 31-71c by the corporate structure of his business. The court struck the defense, reasoning that the defense was flawed because the defendant knew that it was illegal not to pay his employees. We agree with the trial court.

The defendant's brief on this issue consists of one paragraph in which he simply restates his position that § 31-71c requires a mens rea element and that the court improperly relied on *State* v. *Merdinger*, supra, 37 Conn. App. 379. There is no additional analysis of his claim. The defendant's claim is "not amenable to appellate review. In order for this court judiciously and efficiently

---

[8] The defendant filed a notice of intent to rely on a mistake of law defense, to wit: "The defendant, Jaroslaw Nanowski, by and through his attorney . . . does hereby give notice to the State that, in his defense, the defendant intends to rely on a mistake of law defense pursuant to [General Statutes § 53a-6] (b) (2)."

to consider claims of error raised on appeal; *Karanian v. Maulucci*, 185 Conn. 320, 321, 440 A.2d 959 (1981); the parties must clearly and fully set forth their arguments in their briefs. We do not reverse the judgment of a trial court on the basis of challenges to its rulings that have not been adequately briefed. . . . *Krondes v. O'Boy*, 37 Conn. App. 430, 436, 656 A.2d 692 (1995)." (Internal quotation marks omitted.) *New London Federal Savings Bank v. Tucciarone*, 48 Conn. App. 89, 100, 709 A.2d 14 (1998).

## B

With respect to the defendant's claim that the court failed to instruct the jury that the state was required to prove criminal intent beyond a reasonable doubt, we note that the defendant submitted to the court a request.[9] The defendant did not object to the court's instruction and now seeks review pursuant to *State v. Golding*, 213 Conn. 233, 567 A.2d 823 (1989).[10] On the basis of our review of the record, we conclude that the charge of which the defendant now complains was in almost all respects exactly what he himself requested.[11]

---

[9] The relevant portion of the defendant's request to charge stated, "I should point out to you that this statute is silent as to any intent the defendant may have in not paying wages as alleged by the State. Where a statute is silent as to defendant's intent, there is no requirement that the State prove that the defendant intended not to pay the wages. The State need only prove the elements of the statute, that is that the defendant failed to pay wages."

[10] "[W]e hold that a defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." (Emphasis in original.) *State v. Golding*, supra, 213 Conn. 239–40.

[11] Because the charge was given pursuant to the defendant's request, he cannot now claim that the trial court improperly granted the request. *State v. Prioleau*, 235 Conn. 274, 294, 664 A.2d 743 (1995); *State v. Zollo*, 36 Conn. App. 718, 736, 654 A.2d 359, cert. denied, 234 Conn. 906, 660 A.2d 859 (1995).

The court's charge was not inconsistent with the law and was not, therefore, improper.

### III

The defendant's final claim is that there was insufficient evidence to prove that he, not the corporation, was responsible under § 31-71c. We do not agree.

"The two part test for evaluating the sufficiency of the evidence in a jury trial is well established. First, the reviewing court construes the evidence presented at trial in a light most favorable to sustaining the verdict. . . . The reviewing court then determines whether the jury could have reasonably found, on the basis of the facts established and the inferences reasonably drawn from them, that the cumulative effect of the evidence established guilt beyond a reasonable doubt. . . . In conducting this review, the probative force of the evidence is not diminished where the evidence, in whole or in part, is circumstantial rather than direct." (Internal quotation marks omitted.) *State* v. *Clark*, 56 Conn. App. 108, 111, 741 A.2d 331 (1999).

The substance of the defendant's claim is that the state charged him as an individual, not as a director or officer of the corporation. He claims that the evidence was insufficient because the state failed to pierce the corporate veil; see *Saphir* v. *Neustadt*, 177 Conn. 191, 210, 413 A.2d 843 (1979); to find him liable individually. The defendant does not claim that there was no evidence presented at trial that he was the majority shareholder, director and president of the corporation. The defendant also acknowledges that he oversaw the day-to-day management of the corporation, including the signing and issuing of paychecks. The essence of his claim is that there was evidence that the six individuals

To make such a claim on appeal "can at best be described as disingenuous." *State* v. *Prioleau*, supra, 294.

who were not paid were employed by the corporation, not by him individually.

The defendant's argument overlooks the plain language of the statutes.[12] Section 31-71a (1) provides in relevant part: " 'Employer' includes any individual, partnership, association, joint stock company, trust, corporation . . . employing any person, including the state and any political subdivision thereof . . . ." Section 31-71g provides in relevant part: "Any employer or any officer or agent of an employer or any other person authorized by an employer to pay wages who violates any provision of this part may be: (1) Fined . . . or imprisoned . . . ." The defendant does not deny that the six individuals who filed complaints were employed by the corporation or that he is an officer of the corporation who signed and distributed the corporate paychecks. Thus, pursuant to the statute, the defendant individually may be found liable for failing to pay the wages owed.

Furthermore, the corporate veil theory protects officers, directors and shareholders from civil, not criminal, liability. "[W]hen the corporation is the mere alter ego, or business conduit of a person, it may be disregarded. 1 W. Fletcher, Cyclopedia of the Law of Private Corporations (1990) § 41.10, [p. 614] citing, inter alia, *DeSantis* v. *Piccadilly Land Corp.*, 3 Conn. App. 310, 487 A.2d 1110 (1985). . . . The alter ego theory is applicable in contract actions as well as in tort actions. [1 W. Fletcher, supra], § 41.85." (Citation omitted; internal quotation marks omitted.) *De Leonardis* v. *Subway Sandwich Shops, Inc.*, 35 Conn. App. 353, 358, 646 A.2d 230, cert. denied, 231 Conn. 925, 648 A.2d 162 (1994). The state, therefore, did not have to pierce the corporate veil to

---

[12] General Statutes § 1-1 (a) provides in relevant part: "In the construction of the statutes, words and phrases shall be construed according to the commonly approved usage of the language . . . ."

prove that the defendant failed to pay wages. Thus, there was sufficient evidence for the jury to convict the defendant.

The judgment is affirmed.

In this opinion the other judges concurred.